(No. 84460.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ALDWIN McNEAL, Appellant.

*Opinion filed October 13, 2000.—Rehearing denied January 29, 2001.*

138

HARRISON, C.J., concurring in part and dissenting in part.

Marshall J. Hartman, Deputy Defender, and Anna Ahronheim, of the Office of the State Appellate Defender, of Chicago, for appellant, and Aldwin McNeal, of Pontiac, appellant *pro se*.

James E. Ryan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Joel D. Bertocchi, Solicitor General, and William L. Browers, Domenica A. Osterberger and Rebecca Zavett, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Aldwin McNeal, brought this action for post-conviction relief in the circuit court of Lake County. The circuit judge dismissed the petition without an evidentiary hearing. Because the defendant received the death penalty for the underlying first degree murder convictions, the defendant's appeal lies directly to this court. 134 Ill. 2d R. 651(a). We now affirm the judgment of the circuit court.

The offenses involved in this case arose from the deaths of two persons at a restaurant in Waukegan on April 7, 1994. According to the evidence presented at trial, the defendant and an accomplice, James Woods, entered Maude's Pizza around 11:30 in the evening. Two persons who were present in the restaurant, Cory Gerlach and Perry Austin, were shot and killed. The defendant was subsequently convicted, in a jury trial in the circuit court Lake County, of three counts of first degree murder and one count of armed robbery with respect to each victim. The same jury later determined that there were no mitigating circumstances sufficient to preclude a sentence of death, and the defendant was therefore sentenced to death for the first degree murder convictions. The judge concluded that the two armed robbery convictions merged and sentenced the defendant to 30 years' imprisonment on one of the convictions. On appeal, this court affirmed the defendant's convictions and sentences. *People v. McNeal*, 175 Ill. 2d 335 (1997). The United States Supreme Court later denied the defendant's petition for a writ of *certiorari. McNeal v. Illinois*, 522 U.S. 917, 139 L. Ed. 2d 235, 118 S. Ct. 304 (1997).

While the defendant's direct appeal was pending before this court, the defendant began the present action in the circuit court of Lake County, filing a *pro se* petition for post-conviction relief. Counsel was later appointed to represent the defendant in the matter. Shortly after this court issued its opinion on direct appeal, ap-

pointed counsel filed an amended post-conviction petition. Counsel later filed second and third amended petitions, with each new petition incorporating its predecessors and raising additional grounds for relief. The circuit judge initially dismissed all but one of the defendant's post-conviction claims without an evidentiary hearing; the judge allowed the defendant limited discovery with respect to the reserved issue, which concerned a potential conflict of interest involving one of the defendant's trial lawyers. After discovery, the defendant did not submit any further evidence on the matter, however, and the post-conviction judge then dismissed that additional claim as well. The present appeal followed. 134 Ill. 2d R. 651(a).

The Post-Conviction Hearing Act (725 ILCS 5/122—1 through 122—7 (West 1996)) provides a method by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. Tenner*, 175 Ill. 2d 372, 377 (1997). An action for post-conviction relief is a collateral proceeding, not an appeal from the earlier judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). To be entitled to post-conviction relief, a defendant must demonstrate a substantial deprivation of federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged. *People v. Morgan*, 187 Ill. 2d 500, 528 (1999). Considerations of *res judicata* and waiver limit the scope of post-conviction relief "to constitutional matters which have not been, and could not have been, previously adjudicated." *People v. Winsett*, 153 Ill. 2d 335, 346 (1992). Thus, issues that were raised on appeal from the underlying judgment of conviction, or that could have been raised but were not, generally will not be considered in a post-conviction proceeding. *People v. West*, 187 Ill. 2d 418, 425 (1999).

The principal issue in this appeal involves the repre-

sentation of the defendant at the post-conviction proceedings below. In addition, the defendant argues that the suppression of a codefendant's confession in a separate prosecution now requires the suppression in this case of evidence obtained as a result of the codefendant's statement. Finally, the defendant raises a number of issues in *pro se* materials he has filed with this court. We will address these contentions in turn.

The defendant first argues that the cause must be remanded for further proceedings because post-conviction counsel did not provide him with a reasonable level of assistance in the circuit court. Specifically, the defendant complains that post-conviction counsel filed only an incomplete report from an investigator about additional mitigating evidence in this case and failed to request additional time so that the report could be completed. The defendant believes that post-conviction counsel should have submitted a complete report and should have requested additional time, if necessary, for that purpose.

The report that is at the center of this issue was prepared by Amy Watson, a forensic social worker for the capital litigation division of the appellate defender's office. In the report, prepared August 15, 1997, she set out her preliminary findings, which she had acquired from a review of certain records in this case and from interviews with several persons, including the defendant, his mother, and one of his aunts. Watson stated that a number of other witnesses should also be interviewed, and that a number of different areas of inquiry should be explored, including the defendant's neurological impairments, prenatal problems, and head injuries. The report also stated that Watson believed she needed more time to complete the tasks. In an affidavit, Watson stated that the information regarding the mitigating evidence presented at the defendant's sentencing hearing was not made available to her until August 5, 1997, when she

received only summaries of the mitigation testimony. At a hearing on August 19, 1997, post-conviction counsel's law partner appeared on counsel's behalf, explaining that counsel could not be present that day. In discussing the social worker's report, the lawyer did not request additional time so that the research mentioned in the report could be completed. The defendant now argues that he did not receive the minimum level of assistance guaranteed to post-conviction petitioners, for counsel failed to file a complete report and failed also to request additional time so that the report could be finished.

There is no constitutional right to counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 546, 107 S. Ct. 1990, 1993 (1987); *People v. Moore*, 189 Ill. 2d 521, 541 (2000). An indigent defendant who has been sentenced to death is entitled, under section 122—2.1(a)(1) of the Post-Conviction Hearing Act, to representation in proceedings under the Act. 725 ILCS 5/122—2.1(a)(1) (West 1996). Because the source of the right to counsel in a post-conviction matter is statutory rather than constitutional, the degree of skill and care that a lawyer must exercise in representing a post-conviction petitioner is not controlled by the sixth amendment standard announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Rather, a post-conviction petitioner is entitled only to the level of assistance guaranteed by the Act. This court has determined that to be a "reasonable" level of assistance. *People v. Turner*, 187 Ill. 2d 406, 410 (1999); *People v. Guest*, 166 Ill. 2d 381, 412 (1995); *People v. Flores*, 153 Ill. 2d 264, 276 (1992); *People v. Owens*, 139 Ill. 2d 351, 364 (1990).

Toward that end, Supreme Court Rule 651(c) sets out certain requirements that counsel must fulfill in representing post-conviction petitioners. Rule 651(c) provides:

"Upon the timely filing of a notice of appeal in a post-conviction proceeding, if the trial court determines that the petitioner is indigent, it shall order that a transcript of the record of the post-conviction proceedings, including a transcript of the evidence, if any, be prepared and filed with the clerk of the court to which the appeal is taken and shall appoint counsel on appeal, both without cost to the petitioner. The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional right, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." 134 Ill. 2d R. 651(c).

In the case at bar, post-conviction counsel filed a certificate of compliance under Rule 651(c) when he submitted the defendant's first amended post-conviction petition. The certificate recited that counsel had consulted with the defendant "to ascertain his contentions of deprivation of constitutional right," that counsel had "examined the record of the proceedings at the trial," and that counsel had "made any necessary amendments to the petition filed *pro se.*"

We believe that the defendant received the reasonable level of assistance of counsel required by the Post-Conviction Hearing Act, notwithstanding counsel's submission of a report that the preparer said was incomplete. First, the certificate of compliance submitted by post-conviction counsel demonstrated that counsel satisfied the requirements of Rule 651(c): According to the certificate, post-conviction counsel reviewed the defendant's *pro se* petition, discussed the case with the defendant, and shaped the defendant's contentions into coherent arguments. We note that counsel also added arguments that the defendant did not make in his *pro se* petition; the defendant's first amended petition, second

amended petition, and third amended petition all contained arguments that were not raised in the defendant's original, *pro se*, petition. Moreover, the defendant's *pro se* petition did not raise any issue concerning the mitigating evidence introduced at the capital sentencing hearing, and appointed counsel did not raise this contention until he filed the third amended petition, in August 1997. Counsel's delay in presenting the issue may simply indicate its relative lack of merit.

In addition, we note that much of the evidence referred to in the investigator's report had already been introduced at the defendant's sentencing hearing. The judge who decided the defendant's post-conviction case had also presided at the defendant's trial and sentencing hearing, and therefore was well aware of what evidence the defendant had introduced in mitigation at the sentencing hearing. In rejecting this ground for relief, the post-conviction judge stated, in his initial order dismissing all but one claim of the third-amended petition:

"Defendant does not, however, point to any allegedly mitigating evidence presented in the report that would have changed the outcome of his sentencing hearing. Absent such a showing, collateral relief should be denied. *People v. Olinger*, 176 Ill. 2d 326, 370 (1997). Indeed, virtually everything included in the report was presented by mitigation witnesses at the sentencing hearing. Given the mitigation introduced at sentencing and the substantial amount of evidence in aggravation, there is not a reasonable probability that the additional evidence now suggested by the defendant would have produced a different sentence. See *People v. Sanchez*, 169 Ill. 2d 472, 490-91 (1996); and *People v. Lear*, 175 Ill. 2d 262, 277-78 (1997)."

We have reviewed the evidence presented at the sentencing hearing, as well as the investigator's report submitted with the third amended post-conviction petition, and we agree with the post-conviction court's assessment. At sentencing, the defendant presented

testimony from a number of witnesses, who chronicled his life's history and who described his psychological functioning. Dr. Lawrence Heinrich, a licensed clinical psychologist, testified as a defense witness. Dr. Heinrich had interviewed the defendant and had reviewed various records about the defendant, including those compiled while the defendant was serving an earlier prison sentence in Wisconsin for armed robbery. At the defendant's sentencing hearing, Dr. Heinrich testified that the defendant was under the influence of an extreme mental or emotional disturbance at the time of the present offenses. Dr. Heinrich believed that the defendant had paranoid schizophrenia and both borderline personality disorder and antisocial personality disorder. Dr. Heinrich described the defendant as being suspicious, impulsive, and aggressive. Dr. Heinrich also stated that, according to prior testing, the defendant was of average intelligence.

At the defendant's capital sentencing hearing, the defense also introduced evidence about the defendant's difficult childhood and his personal development. The defendant's mother, Cynthia Taylor, and one of his brothers, Tyron McNeal, described in detail the defendant's upbringing. The defendant was born in Milwaukee. The defendant's father, Hertie Jones, was described by Tyron as a pimp, drug dealer, addict, and thief. Family life was chaotic. The family moved to Chicago when the defendant was about seven years old, and his father went to prison at that time. The defendant's mother later remarried. The family eventually moved to Lake County. According to the defendant's mother and brother, when the defendant was only three or four, he was raped by an uncle who was baby-sitting the family.

The defendant's grandmother, Estella Bender, also testified in the defendant's behalf at the sentencing hearing. She stated that the defendant and his siblings would

visit her at her home in Youngstown, Ohio, every summer when the defendant was young. There, the children would attend church regularly, take part in Bible study, and participate in sports and games. Bender also said that on one occasion the defendant told her that he had been raped as a child, when he was three or four. A fellow inmate of the Lake County jail also provided favorable testimony at the defendant's sentencing hearing, stating that the defendant had encouraged him to earn a GED while incarcerated, which the defendant had done.

The report submitted by the investigator mentioned a number of areas of inquiry that the investigator believed might yield useful information about the defendant. As the post-conviction judge found, however, many of these subjects had already been presented at the sentencing hearing. In this regard, the investigator cites a number of studies that purport to show that certain events like those experienced by the defendant may result in problems later in life. Yet trial counsel introduced evidence at sentencing of the sexual abuse experienced by the defendant, as well as his exposure to drugs, crime, and violence. In addition, Dr. Heinrich testified regarding the defendant's psychological functioning, covering much of the same territory the defendant now argues should be reexamined. On this record, we cannot say that appointed counsel in the proceedings below, by submitting a report that its preparer said was unfinished and by failing to request additional time so that it could be completed, provided a less than reasonable level of representation to the defendant, as required by the Post-Conviction Hearing Act.

The defendant next argues that evidence used against him at his trial must be suppressed because it was obtained as a consequence of a confession given by James Woods, a codefendant in this case. In *People v. Woods*, 184 Ill. 2d 130 (1998), this court held that Woods' confes-

sion must be suppressed and that Woods must be retried. The defendant now contends that the suppression of the codefendant's confession requires the suppression of evidence in his own case.

The defendant cannot raise this question for the first time on review. Section 122—3 of the Post-Conviction Hearing Act provides, "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122—3 (West 1996). Accordingly, the issue has been waived. *People v. Johnson*, 154 Ill. 2d 227, 233 (1993). We need not consider here whether this court's determination in *Woods* would support the filing of a successive petition by the defendant. *Cf. People v. Caballero*, 179 Ill. 2d 205 (1997) (defendant allowed to pursue second post-conviction petition to raise sentence-disparity issue after codefendant was sentenced). It is well established, however, that the defendant may not add an issue to the case while the matter is on review.

The defendant was allowed to file a brief *pro se*, raising several issues that appointed counsel has not argued. The State objects to our consideration of these questions, correctly observing that a defendant is not entitled both to be represented by counsel and to proceed as a *pro se* litigant. See *People v. McDonald*, 168 Ill. 2d 420, 435 (1995). In keeping with our past practice in capital cases, however, we will briefly address the questions raised by the defendant in his *pro se* brief. See *People v. Emerson*, 189 Ill. 2d 436, 516-17 (2000); *McDonald*, 168 Ill. 2d at 435; *People v. Gacy*, 125 Ill. 2d 117, 133-34 (1988).

The defendant first contends that trial counsel was ineffective for failing to challenge the search of the defendant's townhouse, from which the police took a bullet and a stereo receiver that belonged to one of the victims. The defendant's wife, Regina McNeal, had consented to the search. The defendant argues, however,

that Regina's consent was coerced, because the police threatened to take her children from her, and that the ensuing search was therefore invalid.

The post-conviction court rejected this argument. The judge noted that the defendant failed to support the contention with an affidavit from Regina McNeal; the judge found that an affidavit to this effect from Cynthia Taylor, the defendant's mother, contained inadmissible hearsay. On appeal, the defendant has attempted to supplement the record with an additional affidavit, that of Evelyn Castro, but it too suffers from the same defect. The post-conviction judge also noted that defense counsel was aware of the contention yet chose not to pursue it. At trial, Regina McNeal was questioned briefly by defense counsel regarding her consent to the search, and McNeal alleged then that law enforcement authorities threatened to remove her children from her custody if she did not consent to the search.

Because trial counsel was aware of Regina McNeal's assertions, the post-conviction judge ascribed counsel's inaction to trial strategy. The post-conviction judge also found that, because the facts supporting the argument existed at the time of trial, the defendant's failure to raise the issue on direct appeal resulted in its waiver for purposes of post-conviction relief. We agree with the post-conviction court's resolution of this issue.

The defendant, in his *pro se* brief, also argues that Regina McNeal's trial testimony was coerced or fabricated and that trial counsel was ineffective for failing to contest it. The defendant did not include this particular claim in any of his post-conviction petitions, however, and therefore we must conclude that it has been waived. As noted earlier, section 122—3 of the Post-Conviction Hearing Act provides that post-conviction claims not raised "in the original or an amended petition" are waived. 725 ILCS 5/122—3 (West 1996). The defendant's

failure to present this issue to the circuit court precludes our consideration of it here. See *People v. Johnson*, 154 Ill. 2d 227, 233 (1993).

The defendant next alleges that law enforcement authorities engaged in misconduct toward two potential witnesses, Delores Smith and Gloria Lomack. According to the defendant's amended post-conviction petition, cited by the *pro se* brief, Smith was threatened by authorities if she testified in the defendant's behalf, and Lomack was threatened if she failed to testify in behalf of the prosecution. Neither woman testified at trial or sentencing.

Delores Smith, in an affidavit submitted with the amended post-conviction petition, states that she knew of exculpatory evidence about the case and that the police threatened her if she testified on the defendant's behalf. The post-conviction judge rejected this claim, noting that the defendant's trial lawyers were aware of Smith's proposed testimony yet chose not to present her as a witness. The record further showed that the defendant had concurred with counsel's decision.

Gloria Lomack, in an affidavit attached to the defendant's post-conviction petition, stated that law enforcement authorities threatened her if she refused to testify against the defendant. Lomack did not testify at either trial or sentencing, however, and therefore the defendant's post-conviction claim is moot with respect to her, even if one assumes her affidavit to be true.

The defendant also contends in his *pro se* brief that trial counsel was ineffective for failing to have forensic tests performed on blood found under the victims' fingernails and on Caucasian hairs found in the hand of one of the victims. The defendant believes that such testing might have disclosed the existence of other offenders.

The post-conviction judge rejected these contentions in the initial order of dismissal, which disposed of all but

one of the defendant's post-conviction claims, and we agree with the judge's assessment. In the order, the judge explained that counsel could not be considered deficient for failing to seek testing of blood found under the victims' fingernails when the victims were lying in pools of their own blood and had blood on their hands and arms. With respect to the Caucasian head hair found in the hand of victim Cory Gerlach, the judge referred to the forensic evidence that showed that Gerlach apparently had his hand against the back of his head when he was shot, because the same bullet went through Gerlach's hand and then into his head. The judge also noted that any contention that a Caucasian committed the offenses would have conflicted with the defense theory at trial, which asserted that codefendant Woods committed the offenses while the defendant waited outside.

The defendant's *pro se* brief raises several additional allegations regarding trial counsel's failure to introduce evidence at trial and to investigate possible sources of exculpatory evidence. The defendant mentions that fingerprints and a footprint were found at the scene of the crime but were never linked to the defendant. He now contends that this evidence was exculpatory and should have been presented to the jury. The defendant also says that a person whom he identifies as "Mr. Soto" saw two white males leave Maude's Pizza, threaten Soto with a gun, and drive off. According to the defendant, Mr. Soto wrote down the license plate number of the vehicle and gave it to the police. The defendant states in his *pro se* brief that trial counsel was aware of this information, and he contends that counsel was ineffective for failing to interview Mr. Soto and present his testimony to the jury.

At no time in the post-conviction proceedings below did the defendant raise any argument concerning the footprint, the fingerprints, or Mr. Soto. As we have noted,

a post-conviction petitioner may not add issues to the case while it is on appeal. The defendant also states that he instructed post-conviction counsel to include these issues in the post-conviction petitions filed below, but that counsel refused to do so. We would note that the offenses occurred in a restaurant, and that the presence of a footprint or fingerprints of other persons unrelated to the crimes would therefore be unremarkable. Furthermore, the defendant's allegations regarding the previously unknown witness, Mr. Soto, simply defy belief.

In a further argument in the *pro se* brief, the defendant argues that trial counsel was ineffective for failing to present the testimony of eight witnesses who were friends or relatives of the defendant and who could have provided exculpatory testimony. We have already discussed two of the persons identified by the defendant in his amended post-conviction petition—Delores Smith and Gloria Lomack—and we need not consider them further. Four other persons named as possible witnesses by the defendant both in his amended post-conviction petition and in his *pro se* brief are Tony Gilmore, Andrea Green, Carnell Taylor, Jr., and David Pitts. The post-conviction judge rejected this argument with respect to those four persons because the defendant failed to present any affidavits showing what their testimony would have been.

The defendant has attempted to remedy that omission by attaching to his *pro se* brief the affidavits of Andrea Green and Carnell Taylor, Jr. In addition, the brief contains affidavits from two more persons, Errol Flynn and Lorenzo McNeal, whom the defendant, in his *pro se* brief, now contends should also have been called to testify. According to the affidavits attached to the *pro se* brief, these additional witnesses would have provided testimony supporting the notion that James Woods acted alone in committing the offenses involved here. The post-conviction court correctly rejected this challenge to

counsel's conduct, noting the defendant's failure to submit any affidavits in support of this contention. We agree with the State that the defendant may not now attempt to supply the omitted information while the case is on appeal. *People v. Guest*, 166 Ill. 2d 381, 401 (1995). Nor may the defendant further expand the list of overlooked witnesses by offering up additional names in his *pro se* brief.

The defendant also briefly argues that trial counsel was ineffective in waiving his right to a jury for trial. The defendant's case was presented to a jury, however, at both the guilt and sentencing phases of the proceedings. Contrary to the defendant's complaints, trial counsel introduced evidence, cross-examined prosecution witnesses, and presented a coherent defense.

In a final *pro se* argument, contained in what the defendant termed a "Motion to File an Additional Claim of Constitutional Deprivation," which this court allowed, the defendant contends that there is a conflict between a rule of this court and a statute regarding the number of peremptory challenges a capital defendant may assert during jury selection. Supreme Court Rule 434 (134 Ill. 2d R. 434) limits a capital defendant being tried alone to 14 peremptory challenges for jury selection, with one additional challenge for each alternate juror chosen. Section 115—4 of the Code of Criminal Procedure of 1963, in contrast, allows a capital defendant being tried alone 20 peremptory challenges for jury selection, and further permits the selection of two alternate jurors, allowing one additional challenge for each alternate. 725 ILCS 5/115—4(e), (g) (West 1996). The defendant, in his own proceedings, was tried alone and received 14 peremptory challenges for jury selection and an additional three peremptory challenges for the three alternate jurors chosen in this case, in accordance with Rule 434; unexercised challenges from the original allotment of 14 could also be

used during the selection of the alternate jurors. The defendant now argues that the rule improperly limits the legislature's determination of the number of peremptory challenges a capital defendant may have.

The defendant failed to raise this issue in any of his post-conviction petitions, however, and therefore we must consider the question waived. As noted earlier, section 122—3 of the Post-Conviction Hearing Act requires that post-conviction claims be included in "the original or an amended petition." 725 ILCS 5/122—3 (West 1996). A post-conviction petitioner may not wait until appeal to formulate the matters that he wishes to assert as grounds for post-conviction relief. In any event, we note that the defendant used only 11 of his 14 peremptory challenges during the selection of a jury, and three more during the selection of the alternate jurors. Thus, the defendant did not run short of peremptory challenges, even with the more limited number of challenges authorized by Rule 434.

\* \* \*

For the reasons stated, the judgment of the circuit court of Lake County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, January 10, 2001, as the date on which the sentence of death, entered in the circuit court of Lake County, is to be carried out. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119—5 (West 1998). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where the defendant is now confined.

*Judgment affirmed.*

154

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that McNeal's murder convictions should not be disturbed. In my view, however, his sentence of death cannot be allowed to stand. For the reasons set forth in my partial concurrence and partial dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). McNeal's sentence of death should therefore be vacated and he should be sentenced to a term of imprisonment. 720 ILCS 5/9—1(j) (West 1994). Because McNeal was found guilty of murdering more than one victim, the term of his imprisonment must be natural life. 730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 1994).