2021 IL App (1st) 182159-U

FIRST DISTRICT,
FIRST DIVISION
September 7, 2021

No. 1-18-2159

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 07 CR 12593 |
| | ) | |
| BOBBY SELVIE, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Postconviction petitioner did not make a substantial showing of actual innocence. (2) Petitioner's trial counsel was not ineffective for failing to call petitioner's mother as an alibi witness where it was a reasonable strategic decision. (3) Postconviction counsel was not ineffective for failing to seek resentencing where such claim would not have been meritorious.

¶ 2    Following a jury trial, defendant Bobby Selvie was convicted of aggravated battery with a firearm of a peace officer in connection with the May 14, 2007 shooting of Detective Patrick Johnson. Defendant was sentenced to 60 years' imprisonment. In 2015, defendant filed a

postconviction petition alleging (1) actual innocence and (2) ineffective assistance of trial counsel for failing to call his mother, Annie Blount, to testify on his behalf. In this appeal, defendant challenges the second-stage dismissal of his petition. He also alleges that he is entitled to a new sentencing hearing because the trial court relied on a 2001 conviction for aggravated unlawful use of a weapon (AUUW) that was rendered void by *People v. Aguilar*, 2013 IL 112116, at the original sentencing hearing. For the reasons that follow, we affirm.

¶ 3                                     BACKGROUND

¶ 4        While Detective Johnson was on patrol in the early morning hours of May 14, 2007, he was shot in the back. Defendant and Richard Butler were charged in the shooting. Butler reached an agreement with the State where, in exchange for his "honest" testimony at defendant's trial, he was allowed to plead guilty to unlawful use of a weapon for 10 years' imprisonment.

¶ 5                               Defendant's Jury Trial

¶ 6        The pertinent evidence introduced at defendant's jury trial follows.

¶ 7        At around 12:45 a.m. on May 14, 2007, Johnson and his partner, Anthony Amato, were on patrol in the 800 block of west 50th Place. Johnson drove south on Peoria, approaching 50th Place. As he did so, he could see three men on the porch of the house at 852 West 50th Place, a house he knew was owned by defendant's family (the Selvie house). There was also a fourth man, Lester Spruille, standing on the sidewalk in front of the house.

¶ 8        As their vehicle approached the Selvie house, one of the men on the porch went inside, and Spruille began walking east, away from the house. Johnson drove slowly alongside him. Five houses down, Spruille began fumbling with the latch on a house gate. Johnson believed he was only pretending to have a key, so he parked and the officers exited the car. Spruille fled

west, back toward the Selvie house, and Johnson gave chase on foot. Amato initially joined the foot chase, then realized he was not going to catch up and went back to get the car.

¶ 9        As Johnson chased Spruille past the Selvie house, he looked at the porch and saw defendant standing halfway up the steps from approximately six or seven feet away. There was a streetlight across the street, and Johnson had no difficulty seeing defendant, whom he knew to be a member of the 50 Strong faction of the Gangster Disciples. "[H]e knew [defendant] from conducting field interviews in the neighborhood, had direct contact with him six to eight times a year, and saw him in the neighborhood on a regular basis." *People v. Selvie*, 2013 IL App (1st) 112689-U, ¶ 14. Johnson did not get a good look at the other person he saw standing behind defendant.

¶ 10        Spruille continued running through a vacant lot adjacent to the Selvie house and into an alleyway. As Johnson neared the end of the lot, he heard a very loud gunshot behind him. Johnson was hit in the lower back and fell to the ground from the impact. Spruille turned around at the sound of the gunshot, then continued running. Johnson turned back toward the Selvie house, where he believed the gunshot had come from, but defendant was no longer there and Johnson did not see anyone in the immediate area.

¶ 11        Within several minutes, backup officers and an ambulance arrived. The officers secured the occupants of the Selvie house, including defendant, Butler, and Calvin Mitchell. Police searched the house and recovered two handguns, a Ruger and a Llama, from a crawl space over the second-floor back porch. A fired cartridge case was recovered from the vacant lot around 8 to 10 feet from the porch of the Selvie house, and ballistics testing showed that it had been fired from the Ruger. Defendant's fingerprints were found on the Llama and on a magazine that fit the

Ruger; Butler's fingerprints were found on the same magazine. No prints were found on the Ruger.

¶ 12        Butler testified that on the evening of May 13, 2007, he and defendant, who were members of the 50 Strong faction of the Gangster Disciples, were acting as security for a gang drug operation at the Selvie house. Butler retrieved two loaded .45-caliber handguns from his home, a Ruger and a Llama, and gave the Ruger to defendant. Shortly before 1 a.m., Mitchell and defendant's cousin Jeffrey Selvie arrived at the house while they were standing guard on the porch. Jeffrey went inside and Mitchell remained on the porch. Butler then noticed an unmarked squad car driving up Peoria Street and told defendant to get inside because police were coming. Butler and defendant went inside, but Mitchell remained outside.

¶ 13        Butler sat on the stairs just inside the door and looked out the front door window. Around 30 seconds later, he saw someone in a black hoodie run past the house, followed by a police officer. As the officer ran by, defendant went outside onto the porch. Seconds later, Butler heard a gunshot. Because the gunshot was so loud, he believed it came from the porch. Defendant then came back inside the house, holding the Ruger.

¶ 14        Butler further testified that upon reentering the house, defendant went up to the second floor and told Butler to give him the Llama. Butler complied. Defendant took both guns to the back of the apartment and returned five minutes later without them. He told Butler two or three times that he had "fucked up."

¶ 15        The day after the shooting, Amato viewed a lineup and identified defendant as one of the people he saw on the Selvie house porch before the shooting. He also identified Butler, although he was less certain about that identification. Later that day, Detective Ford went to the hospital

and showed Johnson a photo array. Johnson positively identified defendant. He also identified Butler as one of the men he initially saw on the porch, but he was not 100% certain.

¶ 16    Defendant called no witnesses at trial and did not testify on his own behalf. He was acquitted of attempted murder of a peace officer and convicted of aggravated battery with a firearm of a peace officer. The trial court sentenced him to 60 years' imprisonment. On direct appeal, we affirmed defendant's conviction and sentence. *Selvie*, 2013 IL App (1st) 112689-U.

¶ 17                        Postconviction Proceedings

¶ 18    On September 21, 2015, defendant filed the instant postconviction petition. As amended, his petition sought relief on the basis of actual innocence and ineffective assistance of trial counsel for not calling defendant's mother to testify at trial. In support, he attached his own affidavit, Kiar Brown's affidavit, and Blount's affidavit.

¶ 19    In his affidavit, defendant stated that on the night of the shooting, he and Butler were drinking and watching the NBA playoffs. He fell asleep on the couch but was awoken by his mother, who told him that there had been a shooting outside. He looked out the window at the vacant lot and saw police standing around a person lying on the ground. A few minutes later, his friend Mitchell knocked on the door, and defendant let him in. Mitchell said that he "just knocked at" someone who was "running past with a banger." Defendant asked him where his gun was, and Mitchell produced a .45 Ruger. Butler wiped it off and defendant put it "on the roof." In the morning, police kicked in the door of his house and arrested defendant, Mitchell, Butler, and defendant's sister, nephew, and cousins. Defendant believed that Mitchell made a statement against him to police, but he refused to implicate Mitchell because he "wasn't raised or brought up like that."

¶ 20        Defendant further stated that his trial lawyer "felt [the State] didn't prove this case" and did not call any witnesses on his behalf. He further averred that counsel "failed to interview key witness[es] in this case. He didn't call my mother, sister, nephew or little cousins as witness[es]. His mindset was my co-defendant's testimony hurt their case and we didn't need to call anybody."

¶ 21        Brown, in his affidavit dated February 19, 2018, stated that in 2007, he was a member of the Gangster Disciples. On May 13, 2007, as he was walking home from the store, he saw Mitchell and someone named Adam on the corner of the 800 block of West 50th Place, "doing security" because of an ongoing gang war with the Black Stones. He stopped to greet them and asked Mitchell if he had "heat"; Mitchell showed him a black-and-silver gun.

¶ 22        As Brown chatted with Mitchell, Jeffrey arrived and went into the Selvie house. Brown decided to head home. While crossing the street, he heard Mitchell say, "Who dat[?]" Brown turned in the direction Mitchell was facing. He saw "a dark figure" and then saw Mitchell raise his gun. Brown ran for home. As he ran, he heard a gunshot and then sirens in the distance.

¶ 23        The next day, Brown's grandmother told him that the Selvie house was on the news because an officer had been shot. Brown later learned that defendant had been charged in the shooting. However, he never saw defendant on the scene before or after the shooting; he only saw Mitchell, Adam, and Jeffrey. He did not come forward with this information at the time because it was gang law never to talk to the police, and he did not want to be "violated" or labeled a snitch for breaking the code of silence. Brown later stopped being an active gang member and decided to help clear defendant's name.

¶ 24        Blount, in her affidavit, stated that on the night of the shooting, defendant and Butler were together in defendant's room, playing video games or watching television. Mitchell

knocked at the door and asked to speak with defendant. Blount "guess[ed]" that he wanted to tell defendant about "a shooting or something" outside their house. The next morning, police kicked in the door of the house and arrested her, defendant, and Butler. Defendant and Butler were accused of shooting a police officer, but Blount knew they were innocent because they were at home with her. She affirmatively stated that defendant was not outside at the time of the shooting.

¶ 25   Blount further stated that in May, "they did a D.N.A. or residue of gunfire or whatever it's called" on defendant and did not find anything connecting him to the shooting. Defendant's lawyer called Blount and told her that defendant was "cleared" and that "everything should be good." However, at a later court date, she overheard a conversation between Butler's lawyer, Butler's sister, and Butler's mother in which the lawyer told them to convince Butler to falsely accuse defendant of being the shooter so that Butler could get out of jail. Butler did, in fact, testify against defendant at trial; Blount, who attended the trial, was shocked that he would lie about her son, his supposed friend.

¶ 26   The circuit court advanced defendant's petition to the second stage of postconviction proceedings, and the State moved to dismiss the petition. In dismissing the petition, the court found that Brown's statement did not constitute newly discovered evidence because his claim that he was afraid to come forward was "beyond generic," and it was not conclusive evidence of innocence because Brown did not claim he saw the actual shooting but only saw Mitchell raise his gun. The court also found that defendant was not prejudiced by his mother's failure to testify because she placed him at the house at the time of the shooting, which meant that he would have had "every opportunity" to commit the crime if he chose to do so.

¶ 27                                                   ANALYSIS

¶ 28            The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)) enables

criminal defendants to challenge their convictions on constitutional or actual innocence grounds.

*People v. Domagala*, 2013 IL 113688, ¶ 32; *People v. Coleman*, 2013 IL 113307, ¶ 94. At the

second stage of postconviction proceedings, the defendant must make a "substantial showing" of

a constitutional violation. (Internal quotation marks omitted.) *Domagala*, 2013 IL 113688, ¶ 33.

We review the second-stage dismissal of defendant's petition *de novo* (*People v. Pendleton,* 223

Ill. 2d 458, 473 (2006)), accepting as true all factual allegations that are not positively rebutted

by the record (*People v. Johnson*, 2017 IL 120310, ¶ 14).

¶ 29                                               Actual Innocence

¶ 30            Defendant first argues that he made a substantial showing of actual innocence based on

Brown's affidavit. To prevail on an actual innocence claim, "the defendant must present new,

material, noncumulative evidence that is so conclusive it would probably change the result on

retrial." *Coleman*, 2013 IL 113307, ¶ 96 (citing *People v. Washington*, 171 Ill. 2d 475, 489

(1996)). As our supreme court explained in *Coleman*:

> "New means the evidence was discovered after trial and could not have been discovered
>
> earlier through the exercise of due diligence. [Citation.] Material means the evidence is
>
> relevant and probative of the petitioner's innocence. [Citation.] Noncumulative means the
>
> evidence adds to what the jury heard. [Citation.] And conclusive means the evidence,
>
> when considered along with the trial evidence, would probably lead to a different result."
>
> *Id.*

See also *People v. Robinson*, 2020 IL 123849, ¶¶ 55-56 (evidence is material to an actual innocence claim if it tends to significantly advance that claim and "need not be entirely dispositive to be likely to alter the result on retrial").

¶ 31        The materiality of Brown's affidavit is questionable. Trial testimony established that Johnson was shot on May 14, 2007 at around 1 a.m., moments after chasing Spruille on foot past the Selvie house. Brown's encounter with Mitchell occurred on "May 13, 2007," and Brown did not provide a timeframe. More importantly, although Brown was chatting with Mitchell outside the Selvie house, he did not claim to see a chase. "I only saw a dark figure," he stated. He ran at the sight of Mitchell raising his gun, and although he heard a gunshot, he did not look back to see if the "dark figure" or anyone else was hit. Without more detail, it would be speculative to assume that the gunshot he heard is the one that struck Johnson.

¶ 32        Even assuming *arguendo* that Brown's affidavit refers to the same gunshot that struck Johnson, his account is not so conclusive that it would likely lead to a different result at trial, because it is consistent with the State's evidence of defendant's guilt. According to Butler, defendant went inside when he saw Johnson's squad car approaching and remained inside until seconds before the shooting. Thus, taking Brown's affidavit as true (see *Johnson*, 2017 IL 120310, ¶ 14), the following timeline of events is entirely plausible: (1) At the sight of Johnson's car, defendant and Butler retreated into the house, while Mitchell remained outside. (2) Brown arrived on the scene and greeted Mitchell. (3) Brown saw a "dark figure" (either Spruille or Johnson) approaching and fled. (4) After Spruille and Johnson ran past the porch, defendant stepped outside and, seconds later, shot Johnson. Notably, Brown did not see the actual shooting and did not look back after he heard the gunshot to see who was outside. Under these facts, his

testimony, when considered along with the trial evidence, would likely not lead to a different result on retrial. See *Coleman*, 2013 IL 113307, ¶ 96.

¶ 33                                    Ineffective Assistance of Trial Counsel

¶ 34        Defendant next argues that his trial counsel was ineffective for not calling his mother to testify that he was inside when the shooting occurred.

¶ 35        Initially, the State argues that this claim is waived because defendant failed to raise it on direct appeal. Although issues that could have been, but were not, raised on direct appeal are deemed waived (*People v. Coleman*, 206 Ill. 2d 261, 277 (2002)), waiver does not preclude consideration of issues based on facts not found in the trial record. *People v. Veach*, 2017 IL 120649, ¶ 47. Since Blount's proffered testimony does not appear in the trial record, the issue is not waived. See *People v. Tate*, 2012 IL 112214, ¶ 15 (petitioner's claim that trial counsel was ineffective for failing to call witnesses was not procedurally defaulted, since "[a]s a result of counsel's allegedly deficient representation, the contents of [the witnesses'] affidavits could not have been included in the record").

¶ 36        To prove ineffective assistance of counsel, a defendant must show that (1) counsel's performance was objectively unreasonable and (2) defendant was thereby prejudiced. *People v. Patterson*, 2014 IL 115102, ¶ 81 (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984)). Defendant must overcome a "strong presumption" that his lawyer's conduct constitutes sound trial strategy and falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "Strategic choices made by counsel after having made a thorough investigation are 'virtually unchallengeable.' " *People v. Williams*, 2017 IL App (1st) 152021, ¶ 38 (quoting *People v. Towns*, 182 Ill. 2d 491, 514 (1998)). Decisions about which witnesses to call are matters of trial strategy (*id.*), and "defense counsel need not call a witness if he reasonably

believes that under the circumstances the individual's testimony is unreliable or would likely have been harmful to the defendant." *People v. Flores*, 128 Ill. 2d 66, 106 (1989)).

¶ 37    Here, defendant's affidavit establishes that his trial counsel chose to strategically pursue a reasonable doubt line of defense instead of calling Blount as an alibi witness. Counsel's decision was not objectively unreasonable. Weak alibi testimony can hurt a defendant's case. *Williams*, 2017 IL App (1st) 152021, ¶ 40 (citing *United States v. Guillette*, 547 F.2d 743, 752 (2d Cir. 1976) (recognizing "a danger likely to arise when jurors, untrained in the law, disbelieve alibi testimony and are inclined to view the failure of the defense as a sign of the defendant's guilt")). Since Blount was defendant's mother, her testimony would likely have carried little weight with the jury. Although Blount vaguely asserted that defendant was inside when Johnson was shot, she did not explain how she was aware of defendant's exact location at that time. In addition, she did not claim to have heard or seen the shooting; she only "guess[ed]" that Mitchell told defendant about "a shooting or something." Under these facts, her testimony would arguably have corroborated Butler's testimony that defendant was at the Selvie house at the time of the shooting.

¶ 38    *People v. Upshaw*, 2017 IL App (1st) 151405, on which defendant relies, is distinguishable. In *Upshaw*, shots were fired at two officers conducting surveillance in the early hours of the morning. Neither officer could identify anyone involved in the shooting, but information from a confidential informant led to defendant's arrest. After 28 ½ hours in police custody, defendant confessed to the shooting and was convicted of attempted murder. *Id.* ¶¶ 5-6.

¶ 39    In a postconviction petition, defendant alleged that his trial counsel was ineffective for failing to investigate and call Tyrone White as an alibi witness. Defendant had told his trial counsel that he was with White at White's house at the time of the shooting and provided

White's contact information, but counsel never contacted White. White attested to this alibi in an affidavit, stating that he left the house at around 2 a.m. and saw defendant asleep on the couch. We found that defendant had made a substantial showing of deficient performance, since "[t]he record suggests no strategic reason that counsel may have decided not to investigate [defendant's] alibi or not to even interview Mr. White." *Id.* ¶ 40.

¶ 40    In contrast, as discussed, there are a number of strategic reasons why defendant's counsel may have decided not to call defendant's mother to the stand in this case. Accordingly, defendant has not made a substantial showing that counsel's performance was objectively unreasonable under *Strickland*.

¶ 41                              2001 AUUW Conviction and Sentencing

¶ 42    For the first time on appeal, defendant argues that we should vacate his 2001 conviction for AUUW ((720 ILCS 24-1.6(a)(2) and (3)(a) (2001)) in case number 01 CR 29381 as unconstitutional under *Aguilar*, 2015 IL 117387, ¶¶ 15-22. In general, a claim not raised in a postconviction petition is forfeited and cannot be raised for the first time on appeal. 735 ILCS 5/122-3 (West 2016); see also *Pendleton*, 223 Ill. 2d at 475. However, defendant's 2001 AUUW conviction was based on a facially unconstitutional statute and is therefore void *ab initio*. *In re N.G.*, 2018 IL 121939, ¶ 57. A void order may be attacked at any time in any court, and such challenges are not subject to forfeiture. *Id.* (respondent was permitted to collaterally attack constitutionally invalid AUUW conviction on appeal). Accordingly, we vacate defendant's conviction for AUUW in case number 01 CR 29381.

¶ 43    Defendant also argues for the first time that he is entitled to a new sentencing hearing because the trial court improperly relied on his void 2001 conviction in rendering sentence. See *id.* ¶ 74 (any conviction based on a facially unconstitutional statute cannot be used against a

defendant in a subsequent proceeding). This claim is plainly forfeited. *Pendleton*, 223 Ill. 2d at 475. Defendant nevertheless argues that his postconviction counsel was ineffective for failing to raise the issue below and asks us to remand for further second-stage proceedings on this issue.

¶ 44    A petitioner has no constitutional right to effective assistance of counsel in postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *People v. Greer*, 212 Ill. 2d 192, 203 (2004). The Act guarantees "reasonable" assistance of counsel (*People v. Hardin*, 217 Ill. 2d 289, 299 (2005)), which is "less than that afforded by the federal or state constitutions" (*Pendleton*, 223 Ill. 2d at 472) and is not governed by the *Strickland* two-part test (*People v. McNeal*, 194 Ill. 2d 135, 142 (2000)).

¶ 45    When the trial court considers an improper factor in sentencing, we will remand for resentencing if we cannot determine the weight the trial court placed on the improper factor. *People v. Minter*, 2015 IL App (1st) 120958, ¶ 152. If it is apparent from the record that the trial court placed "minimal emphasis" upon the factor, resentencing is not required. *Id.* Here, the trial court mentioned defendant's 2001 AUUW conviction in the context of discussing his prior criminal history, which also included convictions for burglary, retail theft, unlawful use of a weapon by a felon, and aggravated driving under the influence. However, in imposing the sentence, the court primarily relied on the nature of the crime. As the court stated, "I simply cannot envision some circumstance where an individual will be justified shooting at a police officer, let alone shooting at a police officer who was running away from him and doesn't see it coming."

¶ 46    This case is analogous to *People v. Ware*, 2014 IL App (1st) 120485, in which we rejected defendant's claim that he was entitled to resentencing because two of his prior convictions were void under *Aguilar*. We observed that the trial court placed "little emphasis" on

the AUUW convictions. *Id.* ¶ 36 (citing *People v. Burge*, 254 Ill. App. 3d 85, 91 (1993) ("When the weight placed on an improperly considered aggravating factor is so insignificant that it did not lead to a greater sentence, a remand for resentencing is not required.")). Likewise, since the trial court placed "little emphasis" on defendant's 2001 AUUW conviction in this case, postconviction counsel was not ineffective and defendant is not entitled to a new sentencing hearing.

¶ 47                                                    CONCLUSION

¶ 48        For the foregoing reasons, we affirm the judgment of the trial court dismissing defendant's second-stage postconviction petition. We also vacate defendant's conviction for AUUW in case number 01 CR 29381 as void under *Aguilar*.

¶ 49        Affirmed.