Docket No. 93208–Agenda 3–January 2003.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PAUL A. DE LA PAZ, Appellant.

Opinion filed May 8, 2003.

JUSTICE FREEMAN delivered the opinion of the court:

Petitioner, Paul De La Paz, is currently serving an extended-term sentence for an armed robbery conviction. He has exhausted his direct appeals and is now before this court on appeal from the dismissal of his petition for postconviction relief. He argues that he received ineffective assistance of counsel in the postconviction proceedings and also argues that his extended-term sentence should be reversed because the procedures followed by the circuit court did not comply with the Supreme Court’s mandate in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We affirm, finding specifically with respect to the latter claim that 
Apprendi
 does not apply retroactively to causes in which the direct appeal process had concluded at the time that 
Apprendi
 was decided.

BACKGROUND

In 1985, a jury in the circuit court of Cook County convicted petitioner of armed robbery, armed violence, home invasion and aggravated battery. A detailed recitation of the circumstances of the crime is not necessary for our analysis, but the facts adduced at trial established that petitioner entered the home of the 77-year-old victim brandishing a hammer and demanding the victim’s wallet. After the victim produced his wallet, petitioner hit him on the head with the hammer and began to ransack his home. Petitioner later also hit the victim with a gun, knocking him unconscious. The circuit court sentenced petitioner to a 55-year extended sentence on the armed robbery conviction and a concurrent 5-year sentence for the aggravated battery conviction. The appellate court affirmed petitioner’s convictions on direct appeal. 
People v. De La Paz
, No. 1–85–3293 (1989) (unpublished order under Supreme Court Rule 23).

Petitioner first petitioned for postconviction relief in September 1986, while his direct appeal was still pending. Appointed counsel filed an amended petition in October 1999, and petitioner followed with a supplemental 
pro se
 petition. Because the arguments raised on appeal do not involve the arguments raised in the various petitions, we will not recount them in detail. We do note that in petitioner’s supplemental 
pro se
 petition, he stated that he had “spoken with the Assistant Public Defender Ingrid Gill, [p]rior to her filing this Supplemental Petition for Post Conviction relief, whereas she had said in a telephone conversation that she was only going to raise 
One
 Issue 
and
 that issue being the one she now raised in” the October petition. (Emphasis in original.) Petitioner continued: “Petitioner not only argued with her about this only issue [
sic
], he filed a complaint with the ARDC Attorney Registration Disciplinary Commission of the Illinois Supreme Court.” Petitioner stated that according to his review of the authorities–specifically citing 
People v. Britz
, 174 Ill. 2d 163 (1996)–the issue counsel raised in the amended petition was “worthless.”

The State moved to dismiss, and the court granted the State’s motion in March 2000. Petitioner appealed, and the appellate court affirmed the dismissal. No. 1–00–0976 (unpublished order under Supreme Court Rule 23).

During the unusual length of time that the petition remained pending in the circuit court, petitioner composed numerous documents complaining of the circumstances that had resulted in his conviction. These included a complaint with the Attorney Registration and Disciplinary Committee (ARDC) against his trial attorney; a letter to the circuit court of Cook County that indicated that he was planning to file a lawsuit against the trial judge, his trial attorney, and the State’s Attorney; and a second letter to a deputy clerk of the circuit court of Cook County reiterating that the assistant State’s Attorney and petitioner’s trial judge were prejudiced against him.

Also, after petitioner filed his postconviction petition, he filed a “motion for leave to file an original petition for writ of mandamus” and a “petition for writ of mandamus,” requesting that his postconviction petition be heard in another county. This request was based on petitioner’s contention that Judge Gillis, who had presided over petitioner’s original trial, was prejudiced against him to such an extent that petitioner could not receive a fair hearing on his postconviction proceeding before Judge Gillis or any other judge in the circuit court of Cook County. The motion was denied. Later, petitioner filed motions for extensions of time to file a “supplemental brief,” contending that the assistant public defender assigned to his case was indifferent to his claims. As a result of these allegations, the assistant public defender was permitted to withdraw as counsel in 1987, and petitioner proceeded 
pro se
. However, no further activity occurred in the case until the court granted a motion to reinstate the petition in June 1993, with the matter reassigned to a different judge. In July 1997 petitioner filed a motion for supervisory order, naming as respondents the judge before whom his petition was pending, the public defender, and two assistant public defenders. In that motion petitioner complained that no progress was being made in his case.

A new assistant public defender, Ingrid Gill, filed an appearance in the case in May 1999. Soon thereafter, petitioner filed a complaint against her with the ARDC, which the ARDC found to be “unfounded.”

The matter was set for hearing in March 2000. At that time, counsel filed a certificate of compliance with Rule 651(c). Counsel then summarized for the court’s benefit the course of proceedings until that point, including the fact that in addition to the filings above, petitioner had also filed lawsuits in federal court against the police and Cermak Hospital, which had been dismissed. The court dismissed the postconviction petition, the appellate court affirmed, and we granted petitioner leave to appeal. 177 Ill. 2d R. 315(a).

ANALYSIS

Before this court, petitioner raises two issues. He contends that (1) his sentence should be reversed because the circuit court did not comply with the procedures required by 
Apprendi
 in sentencing him, and (2) his postconviction counsel was ineffective in failing to request a hearing on petitioner’s competency to participate in postconviction proceedings.

I. 
Apprendi

We first address petitioner’s argument that his 55-year sentence for armed robbery must be vacated and the cause remanded for resentencing because the circuit court entered that sentence without following the procedures required by the Supreme Court in 
Apprendi
.

Initially, we note that petitioner failed to present this argument in his postconviction petition. A petition under the Post-Conviction Hearing Act must, 
inter alia
, “clearly set forth the respects in which petitioner’s constitutional rights were violated.” 725 ILCS 5/122–2 (West 1994). Just as the legislature has set forth what must be contained in a petition, it has specified the consequences of omitting a claim: “[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.” 725 ILCS 5/122–3 (West 1994). “Waiver” is a well-established term of art in the legal field. This court has long recognized that we may, in appropriate cases, reach issues notwithstanding their waiver. At least as long ago as 1957, this court had held that

“the general rule is that where a question is not raised or reserved in the trial court, or where, though raised in the lower court, it is not urged or argued on appeal, it will not be considered and will be deemed to have been waived. However, this is a rule of administration and not of jurisdiction or power, and it will not operate to deprive an accused of his constitutional rights of due process. ‘The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented.’ ” 
People v. Burson
, 11 Ill. 2d 360, 370-71 (1957), quoting 3 Am. Jur. 
Appeal & Error
 §248, at 33 (1936).

See also 
Flynn v. Ryan
, 199 Ill. 2d 430, 438 n.1 (2002) (waiver is an admonition to the parties, not a limitation upon the powers of this court); 
Hux v. Raben
, 38 Ill. 2d 223, 225 (1967) (this court has “the responsibility *** for a just result and for the maintenance of a sound and uniform body of precedent [that] may sometimes override the considerations of waiver that stem from the adversary character of our system”).

“ ‘Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.’ ” 
Burrell v. Southern Truss
, 176 Ill. 2d 171, 176 (1997), quoting 
People v. Hickman
, 163 Ill. 2d 250, 262 (1994). We may thus assume that the legislature understood the legal ramifications of the term “waiver”–including the fact that reviewing courts may overlook waiver in appropriate circumstances–when it enacted section 122–3 in 1964.

In view of the principles noted above, this court has never considered section 122–3 to be jurisdictional in nature. Indeed, we have consistently rejected any notion that section 122–3 stands as an “ironclad” bar to attempts to litigate claims not raised in the original or an amended petition. 
People v. Free
, 122 Ill. 2d 367, 376 (1988). In this case, the State has not made any argument based on defendant’s waiver of the issue. It is well established that the State may waive waiver. See, 
e.g.
, 
People v. Williams
, 193 Ill. 2d 306, 347 (2000); 
Fagan v. Washington
, 942 F.2d 1155, 1157 (7th Cir. 1991).

Accordingly, we address the waived issue on the merits.

These preliminary concerns aside, we now turn to the question whether 
Apprendi
 should be applied retroactively to criminal cases in which direct appeals were exhausted before 
Apprendi
 was decided.

In general, new rules do not apply retroactively to cases on collateral review. 
People v. Moore
, 177 Ill. 2d 421, 430 (1997); 
Flowers
, 138 Ill. 2d at 239. However, this court has adopted the test the Supreme Court promulgated in 
Teague v. Lane
, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989) (plurality op.), to determine when, in derogation of the default rule, a new rule should apply retroactively. According to that test, retroactivity will obtain when

“the new rule either (1) places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe, or (2) requires the observance of those procedures that are implicit in the concept of ordered liberty.” 
Flowers
, 138 Ill. 2d at 237, citing 
Teague
, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073 (plurality op.).

Petitioner does not argue that retroactive application of 
Apprendi
 is authorized under the first 
Teague
 exception. Nor would such an argument be persuasive, if made–
Apprendi
 did not “decriminalize” (see 
Gilmore v. Taylor
, 508 U.S. 333, 345, 124 L. Ed. 2d 306, 320, 113 S. Ct. 2112, 2119 (1993), citing 
Saffle v. Parks
, 494 U.S. 484, 495, 108 L. Ed. 2d 415, 429, 110 S. Ct. 1257, 1263 (1990)) any conduct. The case dealt solely with procedural, not substantive, law.

Accordingly, if 
Apprendi
 is to be applied retroactively, it can only be because the rule announced in that case falls within the second 
Teague
 exception. We conclude that this is not the case. Thus, 
Apprendi
 should not be taken outside the general rule barring retroactivity.

A new rule does not qualify for the second 
Teague
 exception merely because it “is aimed at improving the accuracy of trial. More is required.” 
Sawyer v. Smith
, 497 U.S. 227, 242, 111 L. Ed. 2d 193, 211, 110 S. Ct. 2822, 2831 (1990). The second 
Teague
 exception permits retroactive application only of those “ ‘watershed rules of criminal procedure’ ” that “ ‘ “alter our understanding of the bedrock procedural elements” ’ essential to the fairness of a proceeding” (emphasis omitted) (
Sawyer
, 497 U.S. at 241-42, 111 L. Ed. 2d at 211, 110 S. Ct. at 2831, quoting 
Teague
, 489 U.S. at 311, 315, 103 L. Ed. 2d at 357, 359, 109 S. Ct. at 1076, 1078 (plurality op.), quoting 
Mackey v. United States
, 401 U.S. 667, 693, 28 L. Ed. 2d 404, 421, 91 S. Ct. 1160, 1180 (1971)), “without which the likelihood of an accurate conviction is seriously diminished” (
Teague
, 489 U.S. at 313, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077 (plurality op.)). See also 
Bousley v. United States
, 523 U.S. 614, 620, 140 L. Ed. 2d 828, 838, 118 S. Ct. 1604, 1610 (1998) (“The 
Teague
 doctrine is founded on the notion that one of the ‘principal functions of habeas corpus [is] ”to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted” ’ ”). 
Teague
 cautioned that because “such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge.” 
Teague
, 489 U.S. at 313, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077.

Our appellate court is divided on the issue of whether 
Apprendi
 should be given retroactive application under the second 
Teague
 exception. The seminal cases for the two lines are 
People v. Beachem
, 317 Ill. App. 3d 693 (2000), 
vacated & remanded
, 201 Ill. 2d 577 (2002) (supervisory order) (
Apprendi
 is retroactive), and 
People v. Kizer
, 318 Ill. App. 3d 238 (2000) (
Apprendi
 is not retroactive).

In 
Beachem
, the appellate court acknowledged that “[f]inding retroactivity never should be lightly done” (
Beachem
, 317 Ill. App. 3d at 706), and recognized that neither this court nor the Supreme Court has ever found any new rule to qualify for retroactivity under the second 
Teague
 exception (
Beachem
, 317 Ill. App. 3d at 702). Nevertheless, the court concluded that an 
Apprendi
 violation is so “repugnant to our notions of fundamental fairness” as to necessitate retroactive application under the second 
Teague
 test. 
Beachem
, 317 Ill. App. 3d at 702, 706. That conclusion was based on the following characterization of 
Apprendi
:

“We take 
Apprendi
 to mean that once the defendant serves the prescribed maximum sentence, he or she remains in prison on a charge never made and never proved. And if we acknowledge the defendant remains in prison on a charge never made or proved, we have impugned the integrity of our criminal justice system. It is as if the sentencing judge actually said to the defendant: ‘I have convicted you of a charge never made against you and never heard by the jury, and I have done it based on the preponderance of the evidence.’ ” 
Beachem
, 317 Ill. App. 3d at 702.

In 
Kizer
, the appellate court diverged from 
Beachem
. 
Kizer
 looked first to 
Flowers
, the case in which this court adopted the 
Teague
 framework. The appellate court noted that in 
Flowers
, this court declined to extend retroactive application to our earlier decision in 
People v. Reddick
, 123 Ill. 2d 184 (1988). In 
Reddick
, we had determined that

“the Illinois pattern jury instructions regarding murder and voluntary manslaughter, used by the trial court at the 
Reddick
 defendants’ trials, incorrectly advised the jury that it was the State’s burden to 
prove
 one of the mitigating mental states that would reduce murder to voluntary manslaughter. This court determined that the instructions should have told the jury that it was the State’s burden to 
disprove
 the pertinent mitigating mental states.” (Emphases in original.) 
People v. Salazar
, 162 Ill. 2d 513, 518 (1994) (discussing 
Reddick
).

The 
Kizer
 court reasoned that if the second 
Teague
 exception was to be so narrowly construed that a determination that instructions 
reversing
 the burden of proof did not merit retroactive application, neither then could 
Apprendi
.

The difficulty with the approach taken in 
Beachem
 stems from the overstatement in its characterization of 
Apprendi
. 
Apprendi
 is about sentencing only. For 
Apprendi
 concerns to come into play, a criminal defendant must already have been found guilty of the underlying crime. A defendant raising an 
Apprendi
 claim on appeal is simply complaining that he received a sentence in excess of the normal sentencing range, without the fact or facts necessary to permit such sentence having been proven to a jury beyond a reasonable doubt. See 
United States v. Sanchez-Cervantes
, 282 F.3d 664, 671 (9th Cir. 2002) (rejecting retroactive application of 
Apprendi
 because 
Apprendi
 “only affects the enhancement of a defendant’s sentence once he or she has already been convicted beyond a reasonable doubt. Therefore, it does not rise to the level of importance of” other cases which have been found to apply retroactively). Thus an 
Apprendi
 violation does not mean that a defendant is imprisoned on “a charge never made *** and never heard by the jury.” The most that can be said is that an 
Apprendi
 violation results in a defendant’s imprisonment on a charge 
one element of which
–the sentencing enhancement–was not proven to a jury beyond a reasonable doubt. The Supreme Court has already held that “failure to submit [an] element of” a crime to a jury may constitute harmless error (
Neder v. United States
, 527 U.S. 1, 19-20, 144 L. Ed. 2d 35, 53, 119 S. Ct. 1827, 1839 (1999)), a holding which applies in the 
Apprendi
 context (
People v. Thurow
, No. 90911 (February 6, 2003)). We decline to hold that an 
Apprendi
 violation comprises such constitutional “bedrock” as to require retroactive application, when such error is potentially harmless.

In a similar vein, we also find guidance in 
United States v. Cotton
, 535 U.S. 625, 152 L. Ed. 2d 860, 122 S. Ct. 1781 (2002). There, the Court held that an 
Apprendi
 violation was not plain error because there was “ ‘no basis for concluding that the error “seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.” ’ ” 
Cotton
, 535 U.S. at ___, 152 L. Ed. 2d at 869, 122 S. Ct. at 1786, quoting 
Johnson v. United States
, 520 U.S. 461, 470, 137 L. Ed. 2d 718, 729, 117 S. Ct. 1544, 1550, (1997).

We recognize that the Court so concluded because the evidence of the particular fact in question in the case before it was “overwhelming.” Nevertheless, the implication of the Court’s statement for the instant case is plain. Retroactivity is an all-or-nothing proposition. See 
Kizer
, 318 Ill. App. 3d at 249, citing E. Boshkoff, 
Resolving Retroactivity After Teague v. Lane
, 65 Ind. L.J. 651, 658 (1990); 
Sanchez-Cervantes
, 282 F.3d at 671. An error which does not seriously affect the fairness, integrity or public reputation of judicial proceedings in one or more cases cannot be such a bedrock procedural element essential to the fairness of a proceeding as to fall within the second 
Teague
 exception, requiring retroactive application in all cases.

Additional support for our conclusion is drawn from 
Teague
 itself. There, the specific question before the Court was whether 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986)–which concerned the sixth amendment “fair cross-section” requirement–should be given retroactive application. The Court answered this question in the negative. In the course of its analysis, the Court stated that

“the fair cross section requirement ‘[does] 
not
 rest on the premise that 
every criminal trial
, or any particular trial, [is] 
necessarily unfair because it [is] not conducted in accordance with what we determined to be the requirements of the Sixth Amendment
.’ ” (Emphases added.) 
Teague
, 489 U.S. at 314-15, 103 L. Ed. 2d at 359, 109 S. Ct. at 1077-78 (plurality op.), quoting 
Daniel v. Louisiana
, 420 U.S. 31, 32, 42 L. Ed. 2d 790, 793, 95 S. Ct. 704, 705 (1975).

In other words, a sixth amendment violation does not necessarily render every or any particular trial unfair–thus, again, lending support to our conclusion that the violation of the sixth amendment recognized in 
Apprendi
 is not such a “bedrock procedural element” as requires retroactive application under the second 
Teague
 exception.

Finally, although as noted our own appellate court is divided on the question, our conclusion that 
Apprendi
 does not apply retroactively is in accord with the vast majority of foreign authority, both state
(footnote: 1) and federal.
(footnote: 2) Indeed, our research has revealed 
no
 current decision extending retroactive effect to 
Apprendi
 outside of Illinois. Although this is not a deciding factor, it does lend additional weight to the conclusion we reach. We choose to align ourselves with these other jurisdictions, and hold that 
Apprendi
 does not fall within the second 
Teague
 exception. Accordingly, it does not apply retroactively.

Because we have found that 
Apprendi
 does not apply in this case, we need not further address petitioner’s 
Apprendi
-based argument.

II. Ineffective Assistance of Counsel.

Petitioner also contends that his postconviction counsel was ineffective for failing to raise the issue of his mental fitness to participate in postconviction proceedings. We find this issue to be without merit. A defendant is presumed to be mentally fit at the time of postconviction proceedings. 
People v. Johnson
, 191 Ill. 2d 257, 269 (2000). The level of competency required during postconviction proceedings is less than that required at trial:

“A defendant is considered unfit to stand trial when, ‘because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense.’ 725 ILCS 5/104–10 (West 1998). In contrast, a defendant is considered unfit to proceed with the post-conviction process [only] when, because of a mental condition, he cannot communicate his allegations of constitutional deprivations to counsel, thus frustrating his entitlement, under the Act, to a reasonable level of assistance.” 
Johnson
, 191 Ill. 2d at 269.

Moreover, as a defendant has no constitutional right to the assistance of counsel at a postconviction proceeding, we require only “a reasonable level of assistance” by appointed counsel at such proceedings. 
People v. Moore
, 189 Ill. 2d 521, 541 (2000).

In this case, nothing indicates that petitioner did not receive that level of assistance to which he was entitled. He complains before this court that his various filings complaining about the judge and the attorneys in his original trial should have alerted postconviction counsel that he was possibly mentally unfit to participate in postconviction proceedings. We find no basis for concluding that postconviction counsel erred in failing to raise this claim. We note that counsel was cognizant of the presence of issues concerning mental fitness, as the amended petition counsel filed contained allegations concerning petitioner’s fitness at the time of trial. However, postconviction counsel filed a Rule 651(c) certificate (see 134 Ill. 2d R. 651(c)), in which she certified, 
inter alia
, that she had “consulted with the petitioner by letter and phone on numerous occasions to ascertain his contentions of deprivations of constitutional rights.” Further, in petitioner’s own supplemental 
pro se
 petition, he affirmatively stated that he had “spoken with the Assistant Public Defender” about the issues to be included in the supplemental petition, that he had indeed “argued with” counsel about the matter, filed a complaint with the ARDC because of their disagreement, and conducted his own review of the authorities counsel cited.

All the “fitness” that was required for the postconviction matter to proceed was that petitioner be able to “communicate allegations of constitutional violations to counsel.” 
Johnson
, 191 Ill. 2d at 270. Petitioner’s anger and frustration with the outcome of his initial criminal trial, and his exploration of many potential alternative avenues in search of relief, does not overcome the presumption of fitness, the plain language of postconviction counsel’s Rule 651(c) affidavit, and petitioner’s own admission that he had communicated with counsel. Nothing in the record before us leads us to conclude that counsel failed to provide a “reasonable level of assistance” by believing the evidence of her own eyes that petitioner was perfectly capable of communicating with her about the alleged constitutional violations at his trial. An angry or difficult client is not, intrinsically, a client unfit to participate in postconviction proceedings.

CONCLUSION

For the reasons stated above, we affirm the judgment of the appellate court, which affirmed the circuit court’s dismissal of defendant’s postconviction petition.

Affirmed.

JUSTICE THOMAS, specially concurring:

I agree with the majority’s conclusion that petitioner’s postconviction petition was properly dismissed, and therefore I concur in its judgment. I also agree with its conclusion that 
Apprendi
 does not apply retroactively. I cannot agree, however, with its decision to resolve that issue in this case because there is no 
Apprendi
 claim in petitioner’s postconviction petition. In reaching the merits of the 
Apprendi
 issue, the majority has disregarded both the entire Post-Conviction Hearing Act and this court’s binding precedent interpreting the Act. As I will demonstrate below, the majority’s stated justifications for addressing the issue reveal a manifest confusion over the difference between a direct appeal from a judgment of conviction and review of a trial court’s order dismissing a postconviction petition.

The majority opinion should come to an end shortly after the third paragraph. In this paragraph, the majority alerts the reader that, “Because the arguments raised on appeal do not involve the arguments raised in the various petitions, we will not recount them in detail.” Slip op. at 2. This, of course, should signal that the end of the opinion is coming soon, but the majority manages to go on for 30 paragraphs after acknowledging that petitioner is raising arguments unrelated to the claims he made in his petitions.

Before getting into the specific requirements of the Act, I would note that even as a matter of plain common sense, we should not be addressing arguments about claims that do not appear in the petition. As this court stated in 
People v. Coleman
, 183 Ill. 2d 366, 388 (1998), “[t]he question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act.” How can an argument about a claim that does not appear in the petition have any bearing on whether the trial court erred in dismissing that petition? For instance, if the majority had reached the opposite conclusion in this case and determined that 
Apprendi
 claims can be raised in postconviction petitions, would the majority have reversed the trial court and said that the trial court erred in dismissing the petition? How could the trial court have made such an error if there is no 
Apprendi
 claim in the petition?

A perfect analogy would be in the civil context when a trial court dismisses a complaint. Assume that a plaintiff files a three-count complaint against a defendant, and the trial court dismisses the complaint with prejudice. The plaintiff then appeals, arguing that the trial court erred in dismissing the complaint. However, the plaintiff argues that the trial court erred not because any of the counts in the complaint have merit but because a different count, never filed and presented for the first time on appeal, has merit. No reviewing court would give the time of day to such a preposterous argument, yet that is exactly the position the majority has adopted in the postconviction context.

Turning to the specific requirements of the Act, the majority acknowledges that section 122–3 of the Act (725 ILCS 5/122–3 (West 2000)) specifically provides that “[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.” The majority immediately treats this provision as merely directory rather than mandatory. Several reasons are then given for why this court is free to ignore section 122–3.

The majority asserts that the State has not argued that the claim is waived, and thus the State waived the waiver argument. Slip op. at 7. In support, the majority cites this court’s opinion in a direct appeal, 
People v. Williams
, 193 Ill. 2d 306 (2002). As noted earlier, the only question for a reviewing court on review of the dismissal of a postconviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act.
 Coleman
, 183 Ill. 2d at 388.
(footnote: 3) Yet the majority would have us believe that unless the State points out that a claim is not included in the petition, this court cannot look at the petition but instead must address the petitioner’s argument raised for the first time on appeal. The absurdity of the majority’s argument can be demonstrated by the following hypothetical. A defendant files a postconviction petition raising three issues. The trial court dismisses it as frivolous and patently without merit. The defendant appeals, but does not raise any of the issues in his petition. Instead he raises seven new issues. The State then either neglects to file a brief or files its brief too late for consideration by the reviewing court. According to the majority, the reviewing court would then have to consider all seven of these arguments and could not rely on the defendant’s failure to include them in his petition. Such a position is obviously untenable.

The majority’s position on the State having “waived waiver” overlooks the difference between a direct appeal from a judgment of conviction and an appeal from the dismissal of a postconviction petition. In a direct appeal of a judgment of conviction and sentence, everything that occurred at trial is potentially before the appellate court. The appellate court has appellate jurisdiction over the entire case and can potentially address any errors that occurred. However, it may be that certain errors were not properly preserved and thus are considered waived. Because waiver is a limitation on the parties and not on the reviewing court, the court may sometimes choose to ignore waiver and reach an issue not properly preserved.

In a postconviction proceeding, the entire case is the petition. Any issues must be raised by a petition filed in the circuit court. 725 ILCS 5/122–1(b) (West 2000). On appeal from the dismissal of the petition, the court of review obtains appellate jurisdiction only over the judgment of dismissal. See 
Coleman
, 183 Ill. 2d at 388; 725 ILCS 5/122–7 (West 2000) (“Any final judgment entered upon 
such petition
 shall be reviewed in a manner pursuant to the rules of the Supreme Court”(emphasis added)); 
People v. Hartman
, 408 Ill. 133, 138 (1951) (“Where the statute refers to ‘such petition’ it refers to one in which specific actions, constituting denial of constitutional right, are alleged to have resulted in the petitioner’s imprisonment. The act does not cover any other type of review”). Thus, unlike in a direct appeal, the only matters before the appellate court are those specifically identified in a petition filed in the circuit court. The problem with issues left out of the petition is not they were not properly preserved; they are not even part of the case.

Essentially what the majority argues is that it can assert 
original jurisdiction
 over postconviction claims. It would have to do so to consider a claim not included in the petition because its appellate jurisdiction is limited to reviewing the trial court’s dismissal of the petition. The appellate court may exercise original jurisdiction only “when necessary to the complete determination of any case on review.” Ill. Const. 1970, art. VI, §6. The supreme court may exercise original jurisdiction for the same reason, or in other specified cases, such as revenue, mandamus, prohibition or habeas corpus. Ill. Const. 1970, art. VI, §4. Original jurisdiction is not given to the supreme or appellate courts in postconviction cases, and reaching a postconviction claim filed for the first time in the appellate court is not necessary for the complete determination of the case on review. All that is necessary to determine completely the case on review is to determine if the allegations of the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act. 
Coleman
, 183 Ill. 2d at 388. Thus, a reviewing court would act outside its constitutional authority in exercising original jurisdiction over a postconviction claim. That is why it makes no sense to talk about the State having “waived waiver” in the context of claims omitted from postconviction claims. The reviewing court’s appellate jurisdiction is limited to the contents of the petition, regardless of what the State argues in its brief and regardless of whether the State even files a brief. The parties cannot confer jurisdiction by consent or acquiescence. 
Droste v. Kerner
, 34 Ill. 2d 495, 498 (1966).

In 
People v. Day
, 152 Ill. App. 3d 416 (1987), the appellate court recognized the concept that eludes today’s majority. In 
Day
, the trial court improperly allowed the State to file its motion to dismiss at the first stage of a postconviction proceeding. In dismissing the petition, the trial court relied on the State’s motion to dismiss and did not enter either a verbal or written order specifying findings of fact and conclusions of law. On appeal, the defendant argued that the appellate court could make the original determination of whether the petition was frivolous or patently without merit. The appellate court agreed with the State that it did not have the jurisdiction do to so:

“We further observe that we cannot, as defendant argues, make a determination as to whether or not his petition is frivolous or patently without merit. We agree with the State that we do not have jurisdiction to do so. Jurisdiction to determine whether Day’s petition is frivolous or patently without merit is vested in ‘the court in which the conviction took place.’ (Ill. Rev. Stat. 1985, ch. 38, par. 122–1.) Day’s conviction took place in the circuit court of Cook County, not in this court.” 
Day
, 152 Ill. App. 3d at 421.

Similarly, here, defendant’s conviction took place in the circuit court of Cook County, not in the appellate court and not in the supreme court. Thus, pursuant to the Act, defendant can raise a postconviction claim solely by means of a verified petition filed in the circuit court of Cook County. 725 ILCS 5/122–1(b) (West 2000). The Act does 
not
 provide for postconviction claims to be raised by means of a brief filed in a reviewing court. Thus, we simply do not have jurisdiction over defendant’s 
Apprendi
 claim, and the majority commits a serious error in reaching it.

The majority further asserts that it can excuse petitioner’s compliance with section 122–3 because “waiver is an admonition to the parties, not a limitation upon the powers of this court.” Slip op. at 5, citing 
Flynn v. Ryan
, 199 Ill. 2d 430, 438 n.1 (2002). Not surprisingly, the majority does not cite a case construing section 122–3 of the Post-Conviction Hearing Act for this proposition. Rather, the majority cites 
Flynn v. Ryan
, 199 Ill. 2d 430 (2002), a direct appeal from a trial court ruling that the Gift Ban Act was unconstitutional. Also included is a block quote from a direct appeal, 
People v. Burson
, 11 Ill. 2d 360 (1957). While it may be proper for this court to say that waiver is a limitation on the parties and not on the court when discussing our Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)), which provides that issues are waived when not included in the appellant’s brief, or the rule we stated in 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988), that both an objection and a written posttrial motion are necessary to preserve an error for review, it is quite another thing to say that we can ignore waiver in a situation in which the waiver is mandated by the legislature.

The majority provides no support for its assertion that the legislature intended its pronouncement in section 122–3 to be merely directory. A postconviction proceeding, unlike a criminal trial and appeal, is entirely a matter of statute. The legislature prescribes the rules that must be followed, and this court may not ignore them. The best statement of this principle can be found in Justice Freeman’s special concurrence in 
People v. Wright
, 189 Ill. 2d 1, 23-24 (1999), 
overruled in part on other grounds
, 
People v. Boclair
, 202 Ill. 2d 89 (2002). Discussing the mandatory requirements of the Post-Conviction Hearing Act, Justice Freeman wrote:

“This court has consistently recognized that the legislature, having conferred a right of action, ‘may determine who shall sue and
 the conditions under which the suit may be brought
.’ ” (Emphasis added.) 
Wilson v. Tromly
, 404 Ill. 307, 310 (1949). We have also consistently adhered to the notion that the General Assembly may attach conditions to the relief it creates. See 
Wilson
, 404 Ill. at 311. That being the case, it is the party seeking the statutorily created relief who must ‘ “bring himself within the prescribed requirements necessary to confer the right of action.” ’ ” 189 Ill. 2d at 23-24 (Freeman, C.J., specially concurring, joined by McMorrow, J.), quoting 
Wilson
, 404 Ill. at 311, quoting 
Hartray v. Chicago Rys. Co.
, 290 Ill. 85, 87 (1919).

Here, by raising his 
Apprendi
 claim for the first time on appeal from the dismissal of his postconviction petition, petitioner did not “bring himself within the prescribed requirements necessary to confer the right of action,” and this court 
cannot
 consider the claim. This court is not free to ignore the legislature’s pronouncement in section 122–3.

Further, what the majority apparently does not realize is that it is excusing compliance not only with section 122–3, but also with the entire Post-Conviction Hearing Act. As noted above, the Post-Conviction Hearing Act is entirely a creature of statute, and the legislature has mandated specific requirements that a petitioner must meet to assert a claim under the Act. Any allegation of a substantial denial of constitutional rights must be included in the postconviction petition, and the petition must be verified. 725 ILCS 5/122–1(b) (West 2000). The Act sets out specific time limits for filing the petition. 725 ILCS 5/122–1(c) (West 2000). The petition must contain certain information required by the Act (725 ILCS 5/122–2 (West 2000)) and must have attached thereto “affidavits, records, or other evidence supporting its allegations” or shall state why they are not attached (725 ILCS 5/122–2 (West 2000)). “Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.” 725 ILCS 5/122–3 (West 2000).

After the petition is filed, the trial court examines it to determine if it is frivolous or is patently without merit. 725 ILCS 5/122–2.1(a)(2) (West 2000). At this stage, counsel may be appointed for an indigent defendant if it is a capital case. 725 ILCS 5/122–2.1(a)(1) (West 2000). If the trial court determines that the petition is frivolous or patently without merit, it dismisses the petition. 725 ILCS 5/122–2.1(a)(2) (West 2000). If not, the trial court dockets the petition for further consideration pursuant to sections 122–4 through 122–6. 725 ILCS 5/122–2.1(b) (West 2000).

At the second stage, the trial court may appoint counsel for an indigent defendant. 725 ILCS 5/122–4 (West 2000). Counsel may seek leave to file amendments to the petition. 725 ILCS 5/122–5 (West 2000). Also, the State has 30 days to either answer the petition or move to dismiss.725 ILCS 5/122–5 (West 2000). If it files a motion to dismiss which is denied, it then has 20 days to answer the petition.725 ILCS 5/122–5 (West 2000). The court may “receive proof by affidavits, depositions, oral testimony, or other evidence” and, in its discretion, may require the petitioner to be brought before the court for a hearing. 725 ILCS 5/122–6 (West 2000). Finally, the court enters a final judgment on the petition, and any final judgment may be reviewed in the manner provided for in the supreme court rules. 725 ILCS 5/122–7 (West 2000).

Petitioner did not follow any of the above procedures with respect to his 
Apprendi
 claim. Thus, the majority is not only excusing compliance with section 122–3, it is excusing compliance with the entire Post-Conviction Hearing Act. Defendant’s 
Apprendi
 claim was not in a petition (violating section 122–1(b)), was not verified by affidavit (violating section 122–1(b)), was not served upon the State’s Attorney (violating section 122–1(b)), was not timely (violating section 122–1(c)), did not have attached thereto affidavits or other evidence supporting its claims (violating section 122–2), and was not filed in the trial court (violating section 122–1(b)). Further, the trial court did not have an opportunity to review it (violating section 122–2.1), and the State’s Attorney did not have a chance to move to dismiss it (violating section 122–5). The majority confines its analysis solely to section 122–3 and refuses to discuss how compliance with the Act’s other sections may be excused. There is no provision in the Act that says that the supreme court can decide that the entire Act is merely optional. See 725 ILCS 5/122–1 
et seq
. (West 2000). I cannot emphasize enough that this issue does 
not
 merely involve relaxing waiver. It involves whether this court can excuse compliance with all of the Act’s substantive and procedural requirements.

According to the majority, a claim under the Post-Conviction Hearing Act can be asserted either by following all of the procedures set forth in the Act or by simply raising the claim for the first time on appeal. No support is provided for this novel proposition, and it would seem to directly contradict this court’s opinion in 
People v. Collins
, 202 Ill. 2d 59 (2002). In that case, we held that a petitioner’s verification affidavit (725 ILCS 5/122–1(b) (West 2000)) could not also serve as the affidavits or other evidence supporting the petition’s allegations required by section 122–2. We explained that these provisions are distinct requirements, and that a petitioner must comply with both of these to properly assert a claim under the Act. 
Collins
, 202 Ill. 2d at 66-67. A contrary reading would render section 122–2 meaningless surplusage. 
Collins
, 202 Ill. 2d at 67. Contrast that with today’s case, in which the majority allows a petitioner to ignore the 
entire Act
. The majority’s claim renders the entire Post-Conviction Hearing Act mere surplusage if a petitioner can ignore all of its procedures and simply assert a postconviction claim for the first time in an appellate brief. If this is true, the petitioner in 
Collins
 would have been better off waiting until appeal to assert the claim he truly wanted to raise.

Curiously, the majority refuses to follow 
People v. McNeal
, 194 Ill. 2d 135 (2000), in which we directly confronted the same situation as in this case. The petitioner wished to assert a claim based on a decision that was filed after his petition was already in the appellate stage. We summarily rejected this attempt:

“The defendant cannot raise this question for the first time on review. Section 122–3 of the Post-Conviction Hearing Act provides, ‘Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.’ 725 ILCS 5/122–3 (West 1996). Accordingly, the issue has been waived. 
People v. Johnson
, 154 Ill. 2d 227, 233 (1993). We need not consider here whether this court’s determination in 
Woods
 would support the filing of a successive petition by the defendant. 
Cf
. 
People v. Caballero
, 179 Ill. 2d 205 (1997) (defendant allowed to pursue second post-conviction petition to raise sentence-disparity issue after codefendant was sentenced). It is well established, however, that the defendant may not add an issue to the case while the matter is on review.” 
McNeal
, 194 Ill. 2d at 147.

This statement in 
McNeal
 reflected the approach this court has consistently taken; indeed, the only approach the statute 
permits
 this court to take. See, 
e.g.
, 
People v. Gaultney
, 174 Ill. 2d 410, 423 (1996); 
People v. Orange
, 168 Ill. 2d 138, 154-55 (1995); 
People v. Guest
, 166 Ill. 2d 381, 405 (1995); 
People v. Brisbon
, 164 Ill. 2d 236, 258 (1995) (all citing section 122–3 and refusing to consider issues not raised in the postconviction petition).

The majority’s approach turns 
McNeal
 on its head. In 
McNeal
, we held that if a petitioner neglects to include an issue in his petition he 
cannot
 raise it on appeal from the dismissal of the petition but he may raise the issue in a subsequent petition. However, he can raise the issue in a successive petition only if he can satisfy the cause and prejudice test. 
People v. Orange
, 195 Ill. 2d 437, 449 (2001). Today, the majority holds that a petitioner is actually better off if he raises the claim for the first time on appeal. A petitioner has to meet the cause and prejudice test to raise the waived issue in a subsequent petition, but has to show 
nothing
 to raise the claim for the first time on appeal. Once the petitioner fails to include the issue in an original or amended petition it is waived pursuant to section 122–3. Why does the majority place the petitioner who ignores what we said in 
McNeal
 in a better position than the petitioner who does exactly what we told him to do in 
McNeal
? The majority must address why a petitioner who asserts a postconviction claim for the first time on appeal does not have to meet any standard before doing so.
(footnote: 4)
 Although not stated in the majority opinion, it can be assumed that the reason the majority is ignoring the entire Post-Conviction Hearing Act and acting outside its jurisdiction is that 
Apprendi
 retroactivity is an important issue and the majority wishes to resolve it. In addition to this court’s lack of jurisdiction over the claim, two problems with such an approach are immediately apparent. First, the issue is not in petitioner’s postconviction petition, and we are reviewing whether the trial court erred in dismissing the petition. “The question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act.” 
Coleman
, 183 Ill. 2d at 388. Regardless of the issue’s importance, we simply cannot consider it on appeal from the dismissal of a petition if it is not in the petition. Second, the majority is being disingenuous if it is suggesting that the importance of the issue mandates that we resolve it in this particular case. There is currently another case pending on this court’s advisement docket, People v. Lee, Nos. 93221, 93363 cons., that also involves 
Apprendi
 retroactivity. In 
Lee
, the issue was raised in the postconviction petition. Additionally, this court is currently holding 177 petitions for leave to appeal that raise the issue of 
Apprendi
 retroactivity.
(footnote: 5) Thus, we do not have to resolve 
Apprendi
 retroactivity in this particular case. 

Recently, the Appellate Court, Fourth District, was asked to consider a claim on appeal from the dismissal of a postconviction petition, but the claim was not included in the petition. The appellate court explained that it simply could not consider such a claim:

“Defendant’s contentions of error, even if they were of constitutional magnitude, are forfeited. As we have previously stated, ‘[d]efendant does not cite, nor are we aware of, any case in which the [Post-Conviction Hearing Act] has been construed as permitting a defendant to raise on appeal from the dismissal of a postconviction petition an issue he never raised in that petition. This court will not be the first to so hold.’ ” 
People v. Reed
, 335 Ill. App. 3d 1038, 1040 (2003), quoting 
People v. Griffin
, 321 Ill. App. 3d 425, 428 (2001).

Regrettably, this court 
will
 be the first to so hold.

In sum, I would hold that the trial court properly dismissed petitioner’s postconviction petition. I would not reach the issue of whether 
Apprendi
 applies retroactively because petitioner did not include his 
Apprendi
 argument in his petition. I simply cannot fathom why deciding 
Apprendi
 retroactivity in this particular case, when we have been petitioned to consider the argument in so many cases in which the claim has been presented properly, is worth ignoring common sense, the entire Post-Conviction Hearing Act, years of established precedent by this court, and firmly established rules of appellate procedure. I therefore cannot join the majority opinion.

JUSTICE KILBRIDE, dissenting:

I agree with the following reasoning of the 
Beachem
 court:

“
Apprendi
 *** mean[s] that once the defendant serves the prescribed maximum sentence, he or she remains in prison on a charge never made and never proved. And if we acknowledge the defendant remains in prison on a charge never made or proved, we have impugned the integrity of our criminal justice system. It is as if the sentencing judge actually said to the defendant: ‘I have convicted you of a charge never made against you and never heard by the jury, and I have done it based on the preponderance of the evidence.’ ” 
People v. Beachem
, 317 Ill. App. 3d 693, 702 (2000).

The fundamental meaning of the sixth amendment’s jury trial guarantee is that all facts essential to impose the level of punishment that a defendant receives must be found by the trier of fact beyond a reasonable doubt. 
Ring v. Arizona
, 536 U.S. 584, __, 153 L. Ed. 2d 556, 578, 122 S. Ct. 2428, 2444 (2002) (Scalia, J., concurring, joined by Thomas, J.). This was true long before the United States Supreme Court issued its decision in 
Apprendi
, at least 202 years before 
Apprendi
 to be sure. See 
In re Winship
, 397 U.S. 358, 361, 25 L. Ed. 2d 368, 373-74, 90 S. Ct. 1068, 1071 (1970) (though expressed from ancient times, the “beyond a reasonable doubt” standard seems to have developed by 1798 and is now the accepted “ ‘measure of persuasion by which the prosecution must [prove] all the essential elements of guilt,’ ” quoting C. McCormick, Evidence §321, at 681-82 (1954)). Accordingly, the majority’s decision not to apply 
Apprendi
 retroactively is unnecessary and incorrect. The core of the 
Apprendi
 holding–the requirement that each element necessary to prove a crime be submitted to the trier of fact for proof beyond a reasonable doubt–is nothing new. The principle has been 
active
 for at least two centuries. I believe that the failure to comply with this basic tenet of constitutional law is an error so injurious to our fundamental civil liberties that no sentence meted out in derogation of 
Apprendi
 should be allowed to stand. See 
People v. Swift
, 202 Ill. 2d 378, 392 (2002) (finding that defendant’s crime was brutal and heinous unconstitutionally made by a trial judge); 
People v. Thurow
, No. 90911, slip op. at 18-20 (February 6, 2003) (Kilbride, J., dissenting); 
People v. Crespo
, No. 86556, slip op. at 12-15 (March 31, 2003) (Kilbride, J., dissenting). Through 
Thurow
, 
Crespo
 and now the case at bar, the majority has rendered the sixth amendment jury trial guarantee, identified in 
Apprendi
, an illusion in this state. For this reason, I respectfully dissent.

FOOTNOTES
1:     
1
See 
People v. Bradbury
, No. 01–CA–0541 (Colo. App. September 12, 2002); 
State v. Sepulveda
, 201 Ariz. 158, 32 P.3d 1085 (App. 2001); 
Sanders v. State
, 815 So. 2d 590, 591-92 (Ala. App. 2001); 
Whisler v. State
, 272 Kan. 864, 36 P.3d 290 (2001); 
State ex rel. Nixon v. Sprick
, 59 S.W.3d 515 (Mo. 2001); 
Teague v. Palmateer
, 184 Or. App. 577, 591, 57 P.3d 176, 186 (2002); 
Greenup v. State
, No. W2001–01764–CCA–R3–PC (Tenn. App. October 2, 2002). See also 
Hughes v. State
, 826 So. 2d 1070 (Fla. App. 2002) (finding 
Apprendi
 nonretroactive under pre-
Teague
 test set forth in 
Stovall v. Denno
, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967), and 
Linkletter v. Walker
, 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965)).

2:     
2
See 
Goode v. United States
, 305 F.3d 378, 385 (6th Cir. 2002); 
United States v. Brown
, 305 F.3d 304 (5th Cir. 2002); 
Curtis v. United States
, 294 F.3d 841, 842-43 (7th Cir. 2002); 
United States v. Mora
, 293 F.3d 1213, 1219 (10th Cir. 2002); 
Sanchez-Cervantes
, 282 F.3d at 671; 
McCoy v. United States
, 266 F.3d 1245, 1258 (11th Cir. 2001); 
United States v. Moss
, 252 F.3d 993, 1001-02 (8th Cir. 2001); 
United States v. Sanders
, 247 F.3d 139, 150-51 (4th Cir. 2001).

3:     
3
The majority has implicitly overruled this portion of 
Coleman
. Today, the majority holds that the question on appeal from the dismissal of a postconviction petition is whether the allegations in the 
petitioner’s appellate brief
, liberally construed and taken as true, are sufficient to invoke relief under the Act.

4:     
4
I do not mean by this argument to endorse the cause and prejudice test for reaching claims asserted for the first time on appeal from the dismissal of a postconviction petition. Such a test would be completely unnecessary because we already have a mechanism for petitioners to assert waived claims when fundamental fairness so requires–the successive petition. More importantly, this 
cannot
 be a test to reach claims left out of the petition because our review is limited to the four corners of the petition and we do not have original jurisdiction over postconviction claims. I simply raise the issue to point out that the majority is putting the petitioner who refuses to follow proper procedure in a better position than one who does exactly what he is supposed to do.

5:     
5
This does not include additional petitions for leave to appeal held at the March 2003 term.