NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220106-U

NO. 4-22-0106

FILED
April 21, 2023
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McDonough County |
| TOMMY E. ROWLAND, | ) | No. 19CF123 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Raymond A. Cavanaugh, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The admission of other-crimes evidence was error, and the State failed to argue the admission of the evidence was harmless.

¶ 2   Following a jury trial, defendant Tommy E. Rowland was convicted of attempted murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2018)) and unlawful restraint (*id.* § 10-3(a)) of his wife, Shannon Rowland. In this direct appeal, he argues (1) defense counsel was ineffective in pursuing an unreasonable defense strategy, (2) he was denied a fair trial where the State improperly presented irrelevant background information and evidence of prior uncharged criminal acts, and (3) the cumulative impact of errors during the proceedings denied him the right to a fair trial. We reverse and remand for a new trial.

¶ 3                    I. BACKGROUND

¶ 4        We include only those facts necessary to the disposition of this matter on appeal. In June 2019, the Rowlands were married but living separately. On June 18, Shannon visited defendant at his home and subsequently placed a call to 911 requesting assistance, claiming defendant had beaten her and that she stabbed him in the neck. Defendant fled from the scene. Law enforcement detained defendant following a brief pursuit and transported him to the hospital. The State charged defendant with attempted murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2018)), domestic battery (*id.* § 12-3.2(a)(1)), aggravated domestic battery (*id.* § 12-3.2), and unlawful restraint (*id.* § 10-3(a)).

¶ 5                                        A. Pretrial

¶ 6        In pretrial pleadings and at the ensuing hearings, defendant's counsel stated that he anticipated he would offer evidence that Shannon was a methamphetamine (meth) user and addict. Defendant sought to test hair collected at the scene, believing it would provide evidence of Shannon's meth use. Further, defendant believed Shannon's drug use was relevant to her credibility regarding the recollection of the events at issue and whether she was the aggressor. Defendant presented testimony from Christina Creasy, whose home defendant and Shannon visited on the night of the altercation. Creasy testified that she did not see either defendant or Shannon drink or consume intoxicants while at her home, but Shannon was acting like she might have been high or drunk as she was "jittery" and had a "glazy" eye.

¶ 7        In opposing defendant's request to test the hair and the presentation of other evidence showing Shannon used meth, the State argued there was an absence of evidence showing that Shannon used meth or that her use of meth was relevant. The trial court denied defendant's request to test Shannon's hair for drug usage.

¶ 8        Defendant and the State also filed and litigated numerous motions *in limine*. The State sought to exclude photographs disclosed by defendant depicting Shannon smoking what was argued to be meth, asserting that defendant failed to provide a foundation for the photographs and that the images did not establish Shannon was a drug addict. The State admitted it was aware of defendant's contention that Shannon used meth, but there had been no testimony or evidence establishing Shannon as the individual in the photographs or that meth was the substance being inhaled. Defendant argued that he planned to introduce evidence at trial that Shannon regularly used meth. He argued that the photographs were relevant in establishing her addiction and that the trial court should hold the matter in abeyance until presented at trial. The court denied the State's motion and said it would rule on admissibility at trial.

¶ 9        Several other motions *in limine* were filed by the parties. The State sought and was allowed to introduce instances of other crimes or bad acts. Specifically, prior instances of alleged domestic violence against Shannon and another woman as evidence of propensity to engage in domestic violence pursuant to section 115/7.4 of the Code of Criminal Procedure (725 ILCS 5/115-7.4 (West 2020)). Defendant sought to bar evidence of prior convictions and orders of protection disclosed by the State. The trial court granted the motion in part, excluding evidence of orders of protection against defendant and two prior convictions.

¶ 10                                    B. Trial

¶ 11        At trial, Shannon testified that she and defendant married in May 2018. The State elicited "background" information from Shannon including that she initially lived in Missouri with her eldest son and worked as an assistant manager at Walmart, while defendant lived in Illinois. To visit defendant, she had to drive long distances between the two states. Defendant never visited her in Missouri, but she drove to be with him on the days she was not working, leaving immediately

after her 12-hour shift to undertake the 5-hour drive. Defendant insisted on this arrangement and would become "upset" if Shannon did not want to make the drive.

¶ 12 She moved to Illinois permanently in October 2018 when she got a job at a Walmart near defendant's home, working five 10-hour shifts a week. Defendant was unemployed, and Shannon was providing the couples' financial support. Defendant continually objected to the relevance of the testimony, but the State asserted that it was seeking to provide "background" on the Rowlands' relationship, and the trial court overruled the majority of objections.

¶ 13 During the "background" testimony, the following exchange took place:

"MS. MAXWELL [(ASSISTANT STATE'S ATTORNEY)]: Shannon, were there times that you didn't feel safe making the drive?

A. Yes.

MR. GILSDORF [(DEFENSE COUNSEL)]: Objection, [Y]our Honor. It's irrelevant.

THE COURT: Overruled.

MS. MAXWELL: And did there come a time when you did something to help you stay awake?

A. Yes.

Q. And, Shannon, what did you do?

A. I had to use meth.

Q. Okay. And when you say meth, you mean methamphetamine; correct?

A. Yes.

Q. Where did you get the methamphetamine that you used?

A. From [defendant].

Q. And why did you use the methamphetamine?

A. To stay awake during the drive so I wouldn't wreck."

¶ 14 Defendant did not immediately object to this testimony. Shannon then detailed a previous incident of domestic abuse between her and defendant, with the State introducing photographs of her alleged injuries. Shannon also described the events leading up to the incident at issue as well as the incident itself. A 911 recording was played, and Shannon testified to her conversation with the operator. Following testimony on the 911 call, the trial court recessed for the day.

¶ 15 Before Shannon resumed her testimony the following day, defendant argued for a mistrial, asserting the State intentionally elicited not just evidence of Shannon's drug use but that defendant supplied her with meth. Among other assertions, defendant argued that he could have prepared better for trial or investigated this assertion further if disclosed by the State prior to trial. The State argued that defendant did not face charges stemming from possession or delivery of meth, and Shannon was not on trial. Further, the State claimed it had no more information on Shannon's drug use other than what she testified to, it did not act in bad faith by not disclosing the information, and that it was trial strategy to front Shannon's meth use. Defendant argued in rebuttal that the information about Shannon's drug use was exculpatory and the failure to disclose it constituted a discovery violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

¶ 16 The trial court denied defendant's motion for mistrial, finding the State's trial strategy was to front Shannon's drug use, there was no *Brady* violation because "it's not a prior criminal conviction," and that defendant could cross-examine Shannon about her meth use.

¶ 17 Following deliberations, the jury found defendant guilty of all charges.

¶ 18                              C. Posttrial Motion

¶ 19          Defendant filed a timely posttrial motion requesting judgment notwithstanding the

verdict or, in the alternative, a new trial. Defendant raised numerous issues in the motion, including

that the State improperly introduced undisclosed bad acts of defendant where he provided meth to

Shannon. In an attached memorandum, defendant referenced Illinois Rule of Evidence 404(b) (eff.

Jan. 1, 2011).

¶ 20          The trial court denied defendant's motion, finding that the State did not willfully

fail to disclose any evidence and that it had used the tactic of fronting Shannon's drug use where

defendant planned to introduce the issue at trial. The court did not specifically address the improper

admission of other-crimes evidence argument. The court then sentenced defendant to 22 years'

imprisonment for attempted murder and 3 years for unlawful restraint.

¶ 21          This appeal followed.

¶ 22                                  II. ANALYSIS

¶ 23          On appeal, defendant argues (1) defense counsel provided ineffective assistance by

pursuing an unreasonable trial strategy, (2) he was denied a fair trial where the State improperly

introduced previously undisclosed evidence of uncharged criminal acts and the trial court failed to

exclude or mitigate that evidence, and (3) the cumulative effect of numerous errors in these

proceedings denied him the right to a fair trial. We only address defendant's argument in relation

to the improper admission of other-crimes evidence as we find the issue dispositive.

¶ 24                             A. Other-Crimes Evidence

¶ 25          Defendant argues that the State violated its discovery obligations and improperly

presented evidence that he engaged in the possession and delivery of a controlled substance

constituting improper admission of other-crimes evidence.

- 6 -

¶ 26 The State argues that defendant "mischaracterizes" how the testimony came into evidence, the disclosure of the delivery of the controlled substance was not tantamount to other-crimes evidence as established by statute or caselaw, and the testimony was not related to defendant's charges.

¶ 27 Initially, we note that our review of the record shows that defendant raised this issue only in his posttrial motion and not contemporaneously with the testimony at issue. See *People v. Sebby*, 2017 IL 119445, ¶ 48 ("To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion."). Defendant's specific objection during trial was that the State violated its discovery responsibilities under Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001) and the failure to disclose knowledge of Shannon's drug use was a violation under *Brady*. See *People v. Washington*, 23 Ill. 2d 546, 548 (1962) ("An objection to evidence, based upon a specific ground is a waiver of objection on all grounds not specified."). The posttrial motion renews the arguments that the State violated its discovery obligations and adds the argument that the conduct of defendant introduced into evidence was a "bad act," and the evidentiary rule concerning other-crimes evidence is mentioned in the supporting memorandum.

¶ 28 However, the State surprisingly fails to *argue* that defendant forfeited this claim, and it is well established that the State can forfeit forfeiture. *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003); *People v. Bahena*, 2020 IL App (1st) 180197, ¶ 29 (collecting cases); *People v. Skillom*, 2017 IL App (2d) 150681, ¶ 24. Accordingly, by failing to argue defendant's forfeiture, the State has itself forfeited that argument. We will, therefore, consider the merits of the issue presented.

¶ 29    Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011) provides that, subject to certain exceptions,

> "[e]vidence of other crimes, *wrongs, or acts* is not admissible to prove the character of a person in order to show action in conformity therewith ***. Such evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)

"Evidence of crimes for which a defendant is not on trial is inadmissible if relevant merely to establish his propensity to commit crime. [Citations.] Such evidence overpersuades the jury, which might convict the defendant only because it feels he is a bad person deserving punishment." *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991). The admissibility of other-crimes evidence is a matter left to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12.

¶ 30    Initially, we find the State's main contention that the possession and delivery of meth by defendant did not constitute other-crimes evidence unavailing. The possession and delivery of meth are both criminal offenses. See 720 ILCS 646/55(a)(1), 60(a) (West 2018). Furthermore, Rule of Evidence 404(b) references not only charged crimes, but also evidence of other *wrongs or acts*. We are also unconvinced by the argument that the testimony relating to defendant's possession and delivery of meth is mitigated by the lack of relevance to the charges faced at trial. On the contrary, this shows its overwhelmingly prejudicial nature as, " 'Evidence of another crime [ ] may be used only when the other crime has some threshold similarity to the crime charged. It is this similarity which increases the relevance of the evidence and ensures that it is not

being used solely to establish the defendant's criminal propensities.' " *People v. Smith*, 2019 IL App (4th) 160641, ¶ 59 (quoting *People v. Bartall*, 98 Ill. 2d 294, 310 (1983)).

¶ 31       We further find disingenuous the State's argument the testimony was not intentionally elicited and was only introduced to the jury by happenstance. We do not fault the State for attempting to front the substance abuse of its key witness in this case, as doing so is a legitimate trial strategy. However, that goal was accomplished when Shannon admitted to taking meth to stay awake when traveling from work to defendant's home. Where the situation becomes suspect is in the State's follow-up question regarding the source of the drug. It is difficult to see this as an innocent follow-up question asked without knowledge of the loaded answer. The State never thought to ask the date the drug was acquired, the quantity received, the price paid, or a host of other details, and there is, of course, no reason it would have had any interest in such irrelevancies. Did the State just happen to ask the one follow-up question which would prejudice defendant: What was the source of the drug? The record strongly suggests that, although the State decided to take its lumps by fronting the substance abuse of its key witness, it did so in a manner intended to do damage to the defendant as well.

¶ 32       We have little difficulty in concluding that the eliciting of this other-crimes evidence was improper because of both its substance and the State's failure to disclose in advance its intention to offer it as required by Rule 404(c). Generally, the erroneous admission of other-crimes evidence carries a high risk of prejudice and ordinarily calls for the reversal of a criminal conviction. See *People v. Cortes*, 181 Ill. 2d 249, 285 (1998).

¶ 33       Having found the admission of testimony that defendant possessed and delivered meth to Shannon was improper, this is the point in our analysis where we would normally address a harmless error argument from the State. The Illinois Supreme Court has repeatedly held "that the

improper introduction of other-crimes evidence is harmless error when a defendant is neither prejudiced nor denied a fair trial based upon its admission." *People v. Nieves*, 193 Ill. 2d 513, 530 (2000) (collecting cases). "To establish that any error was harmless, the State must prove beyond a reasonable doubt that the result would have been the same absent the error." *People v. Jackson*, 2020 IL 124112, ¶ 127. We further note that there was no limiting instruction to the jury on the use of the testimony that defendant possessed meth with an intent to deliver. Accordingly, the jury was free to consider the testimony in any manner it saw fit, including propensity, regardless of the context in which it was presented. *Gregory*, 2016 IL App (2d) 140294, ¶ 30.

¶ 34 Remarkably, the State *does not argue* that admission of this testimony was harmless error. Defendant in his reply brief acknowledges this misstep by the State and asks that we honor the State's forfeiture. The rules of forfeiture in criminal proceedings equally apply to both the defendant and the State. *People v. Artis*, 232 Ill. 2d 156, 178 (2009). We agree with defendant that the State has forfeited any harmless error argument. See *People v. Gregory*, 2016 IL App (2d) 140294, ¶ 29 (citing *People v. Ceja*, 381 Ill. App. 3d 178, 183 (2008); Ill. S. Ct. R. 612(b)(9) (eff. July 1, 2017) (applying Rule 341 to criminal appeals); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited.").

¶ 35 Finding that we must reverse and remand for a new trial based on defendant's other-crimes evidence argument, we need not address the remaining arguments raised on appeal.

¶ 36 III. CONCLUSION

¶ 37 For the reasons stated, we reverse the trial court's judgment.

¶ 38 Reversed and remanded.