NOTICE

Decision filed 04/17/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 160052-U

NO. 5-16-0052

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 85-CF-80 |
| | ) | |
| LEON FENDERSON, | ) | Honorable |
| | ) | Eric J. Dirnbeck, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Boie and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Where the defendant failed to make a substantial showing that his sentence of natural life imprisonment is constitutionally infirm and must be vacated or reduced, and any argument to the contrary would lack merit, appointed appellate counsel is granted leave to withdraw as counsel, and the judgment of the circuit court, dismissing the defendant's postconviction petition, is affirmed.

¶ 2    In 1985, a jury found the defendant, Leon Fenderson, guilty of murder, and the circuit court sentenced him to imprisonment for a term of natural life. In 2000, the defendant filed a *pro se* petition for relief from judgment, wherein he claimed that his natural life sentence was unconstitutional under the rule enunciated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court recharacterized the defendant's *pro se* petition as a petition for postconviction relief and appointed postconviction counsel for the defendant. Later, the defendant proceeded *pro se*, and he filed an amended petition and a supplement to the petition. Ultimately, the circuit court

1

dismissed the postconviction petition, as amended and supplemented by the defendant. From that dismissal, the defendant now appeals.

¶ 3    The defendant's appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has concluded that the instant appeal lacks merit, and on that basis, it has filed a motion to withdraw as counsel (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)), along with a brief in support of the motion. The defendant has filed with this court two separate responses to OSAD's *Finley* motion, asking that this court vacate his natural life sentence and remand this cause to the circuit court for either a new trial or a new sentencing hearing. This court has examined OSAD's *Finley* motion and brief, the defendant's written responses, the entire record on appeal, and this court's decisions in prior appeals in this cause. This court has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as appellate counsel for the defendant, and the judgment of the circuit court is affirmed.

¶ 4                                  BACKGROUND

¶ 5    In September 1985, a jury found the defendant guilty of murder (Ill. Rev. Stat. 1985, ch. 38, ¶ 9-1(a)(2)) and concealment of a homicidal death (*id*.¶ 9-3.1(a)). In October 1985, the circuit court sentenced the defendant to imprisonment on both counts, with a term of natural life for the murder count and a term of five years for the concealment count. In imposing the natural life sentence, the circuit court relied upon section 5-8-1(a)(1)(b) of the Unified Code of Corrections (Corrections Code), which allowed a court to impose a sentence of natural life imprisonment for murder if the court made a factual finding that the murder was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-1(a)(1)(b).

¶ 6    On direct appeal, this court affirmed the conviction and sentence for murder. This court reversed the conviction and sentence for concealment of a homicidal death, due to insufficient evidence of guilt. See *People v. Fenderson*, 157 Ill. App. 3d 537 (1987). In regard to the natural life sentence for murder, this court concluded that the record was sufficient to support the requisite finding under section 5-8-1(a)(1)(b) of the Corrections Code, *i.e.*, the circuit court's factual finding that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. This court noted that the victim, Mary Rhodes, "had been beaten to death, having been struck repeatedly on her head and chest. Two ribs were broken. After being severely beaten but while still alive, she was placed in a shower under hot water which caused second degree burns." *Id.* at 550. The defendant filed a timely petition for leave to appeal, which our supreme court denied on February 3, 1988. See *People v. Fenderson*, 118 Ill. 2d 547 (1988). The defendant did not file a petition for a writ of *certiorari*.

¶ 7    In January 1991, the defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1991, ch. 38, ¶ 122-1 *et seq.*), thus commencing his first postconviction proceeding. The defendant claimed that he had been deprived of a fair trial and equal protection, that trial counsel had provided ineffective assistance, and that his natural life sentence was excessive and represented an abuse of the circuit court's discretion. Although the circuit court appointed postconviction counsel, the defendant later filed a *pro se* amended postconviction petition. Ultimately, the circuit court dismissed the *pro se* amended postconviction petition. On appeal, this court affirmed the dismissal order. See *People v. Fenderson*, No. 5-93-0386 (Jan. 26, 1995) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8    On November 29, 2000, the defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1998)), alleging that his

3

sentence of imprisonment for a term of natural life was improper under the rule enunciated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the sentencing judge, rather than the jury, made the factual finding on which the natural life sentence was predicated, *i.e.*, the finding that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Without prior notice to the defendant, the circuit court recharacterized the defendant's section 2-1401 petition as a (successive) petition for postconviction relief. On February 6, 2001, the circuit court appointed postconviction counsel for the defendant, effectively advancing the recharacterized postconviction petition to the second stage of postconviction proceedings. On March 7, 2001, the State filed a motion for extension of time, asking the court to allow it to respond to the postconviction petition after appointed postconviction counsel had decided whether to file an amended postconviction petition.

¶ 9    Years passed. The record on appeal does not indicate what, if anything, occurred in this case between March 2001 and May 2004. On May 17, 2004, the defendant filed a *pro se* "supplement" to the postconviction petition, wherein the defendant argued that he was sentenced to life imprisonment pursuant to a "statutory scheme" that was unconstitutional because it (1) "dictated the mode of the proceeding", (2) relieved the State of its burden of calling witnesses at the defendant's "capital sentencing hearing" in order to prove that the crime was exceptionally brutal and heinous, and (3) "circumscribes the power of the court to determine facts and law." In June 2004, the circuit court, on its own motion, scheduled a status hearing. Additional years passed. The record does not indicate what, if anything, occurred in this case between June 2004 and September 2007. On September 13, 2007, the defendant filed a *pro se* "motion to supplement" his postconviction petition, wherein he complained that appointed postconviction counsel was

4

neglecting his case. In October 2007, the circuit court, on its own motion, scheduled a status hearing.

¶ 10 On May 27, 2008, the State filed a motion to dismiss the defendant's postconviction petition, on the grounds that (1) it was untimely, (2) the defendant had not obtained leave of court to file a successive postconviction petition, and (3) the *Apprendi* decision did not apply retroactively to the defendant's case. The record shows that between May 2008 and September 2013, the circuit court held many status hearings in this cause. On September 11, 2013, the defendant filed a *pro se* "motion for interlocutory ruling and appointment of new counsel," wherein he asked the circuit court to decide whether his postconviction petition should be advanced to the third stage of postconviction proceedings and also asked for the appointment of new counsel. In November 2013, the court allowed postconviction counsel to withdraw, due to counsel's appointment as an associate circuit judge, and appointed substitute postconviction counsel for the defendant.

¶ 11 In February 2014, substitute postconviction counsel filed a motion to withdraw as counsel, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Counsel argued that the defendant could not make a substantial showing of a constitutional violation because *Apprendi* did not even apply to his case, since the direct appellate review of his case had been completed prior to the decision in *Apprendi*. The defendant promptly filed a written objection to postconviction counsel's *Finley* motion, arguing that *Apprendi* did indeed apply to his case, and also arguing that section 5-8-1(a)(1)(b) of the Corrections Code, the section under which he was sentenced to natural life imprisonment, was void *ab initio* because it assigned to the sentencing judge, and not to the jury, the task of determining whether the murder was accompanied by exceptionally brutal or heinous

5

behavior, etc. On March 5, 2014, the court held a hearing on counsel's *Finley* motion, and it granted the motion. The court also allowed the State 30 days in which to file a responsive pleading or a motion to dismiss the postconviction petition.

¶ 12    On March 27, 2014, the defendant filed a *pro se* amended postconviction petition, wherein he argued that the *Apprendi* rule applied retroactively to his case even though direct appellate review of his case had been completed prior to the *Apprendi* decision. The defendant also requested the appointment of another postconviction attorney. Having been granted additional time in which to file a response or a motion to dismiss, the State on April 30, 2014, filed a motion to dismiss the amended postconviction petition, on the ground that *Apprendi* did not apply retroactively to the defendant's case. On June 9, 2014, the defendant filed a *pro se* response to the State's April 30, 2014, motion to dismiss, arguing that regardless of when his direct-appeal process concluded, his natural life sentence was imposed in violation of due process, and the sentence needed to be reduced. On August 13, 2014, the defendant was in court, *pro se*, and he filed a "supplement" to the amended postconviction petition, wherein he claimed that (1) direct-appeal counsel had provided ineffective assistance by not raising the *Apprendi* issue, (2) the State had filed its motion to dismiss his postconviction petition in an untimely manner, thus requiring the circuit court to grant the relief the defendant requested, and (3) he was statutorily entitled to the appointment of postconviction counsel. The court scheduled for September 10, 2014, a hearing on the State's motion to dismiss the amended postconviction petition. The State soon filed a response to the defendant's August 13, 2014, supplement.

¶ 13    On September 10, 2014, the court held a hearing on the State's motion to dismiss the amended postconviction petition; the State and the defendant *pro se* presented arguments already stated in their written pleadings, and the court took the matter under advisement. On October 8,

2014, the circuit court announced to the State and the defendant *pro se*, in open court, that it "denied" the defendant's postconviction petition. The defendant immediately perfected an appeal from the order, and the circuit court appointed OSAD to represent him on appeal. However, on October 29, 2014, the defendant filed a *pro se* "motion for rehearing and reconsideration," wherein he argued that (1) the circuit court, in February 2001, improperly recharacterized his *pro se* section 2-1401 petition as a petition for postconviction relief, for the court recharacterized the *pro se* pleading without first providing the defendant with proper notice and admonishment, and under those circumstances, the court's dismissal of the postconviction petition constituted reversible error, as held by our supreme court in *People v. Pearson*, 216 Ill. 2d 58 (2005), (2) the circuit court deprived the defendant of due process when it refused to appoint substitute postconviction counsel after the March 5, 2014, withdrawal of postconviction counsel, and (3) the constitutional prohibition on *ex post facto* laws was violated when the court refused to grant the relief he had requested in his November 2000 postconviction petition.

¶ 14    In July 2015, this court entered an order remanding the cause to the circuit court with directions to strike the October 8, 2014, notice of appeal as premature and to proceed on the timely-filed October 29, 2014, motion to reconsider. See *People v. Fenderson*, No. 5-14-0505 (July 31, 2015 (unpublished summary order under Illinois Supreme Court Rule 23(c)). In September 2015, the defendant filed in the circuit court a *pro se* amended motion to reconsider, wherein he argued that the extended-term portion of his natural life sentence, *i.e.*, the portion that exceeded the nonextended maximum of 40 years, was unauthorized by statute and was therefore void, since the extended-term portion was based on an aggravating factor that was proved only by a preponderance of the evidence, and not beyond a reasonable doubt. On January 20, 2016, the State and the defendant *pro se* appeared before the circuit court. The defendant again moved for the

appointment of new postconviction counsel, and the circuit court denied that motion. The defendant argued that the sentencing court lacked the statutory authority to impose a sentence greater than the 40-year maximum nonextended term, rendering void any portion of the sentence beyond 40 years, and it asked the circuit court to reduce his sentence to 40 years. From the bench, the court denied the motion to reconsider. The defendant perfected the instant appeal. The court appointed OSAD to represent the defendant in this appeal.

¶ 15 ANALYSIS

¶ 16 This appeal is from the second-stage dismissal of the defendant's successive petition for postconviction relief, as amended and supplemented by the defendant. As previously mentioned, the defendant's appointed counsel on appeal, OSAD, has concluded that this appeal lacks merit and has filed a *Finley* motion to withdraw as counsel, along with a supporting brief. In its brief, OSAD discussed three potential issues in this appeal, reframed as follows: (1) whether the United States Supreme Court's decision in *Apprendi v. New Jersey* applies retroactively to the defendant's case, (2) whether the circuit court was required to appoint a third postconviction counsel for the defendant after the court granted the second postconviction counsel's *Finley* motion and allowed her to withdraw, and (3) whether postconviction counsel failed to satisfy the requirements of Illinois Supreme Court Rule 651(c). This court will address those three potential issues.

¶ 17 The Post-Conviction Hearing Act (Act) provides a method by which any person imprisoned in the penitentiary may assert that his conviction resulted from a substantial violation of his federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2018); *People v. Smith*, 2015 IL 116572, ¶ 9. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. A criminal defendant initiates a postconviction proceeding by filing a petition in the circuit court. 725 ILCS 5/122-1(b)

8

(West 2018). In general, the Act contemplates the filing of only one postconviction petition in any particular cause. See, *e.g.*, *People v. Flores*, 153 Ill. 2d 264, 273 (1992). A postconviction proceeding has three distinct stages. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 18 In the instant case, the defendant in November 2000 filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1998)), therein presenting his claim that *Apprendi* was violated in his case and necessitated relief. Without prior notice to the defendant, the circuit court recharacterized that petition for relief from judgment as a petition for postconviction relief, and it appointed postconviction counsel for the defendant, thus advancing the (recharacterized) postconviction petition to the second stage of postconviction proceedings. See 725 ILCS 5/122-2.1(b), 122-5 (West 2014). (The circuit court did not seem to mind that the postconviction petition was a successive petition.) Ultimately, the circuit court dismissed the petition at the second stage.

¶ 19 At the second stage of postconviction proceedings, the criminal defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The circuit court must take as true all well-pleaded facts that are not positively rebutted by the trial record. *Id.* In short, the second stage of postconviction scrutiny "tests the legal sufficiency of the petition." *People v. Domagala*, 2013 IL 113688, ¶ 35. If the court finds that the defendant failed to make the requisite substantial showing, and it dismisses the postconviction petition on that basis, the dismissal is reviewed *de novo*. *People v. Cotto*, 2016 IL 119006, ¶ 24.

¶ 20 OSAD, in its brief filed in support of its *Finley* motion, states that a potential issue in this appeal is whether the *Apprendi* decision applies retroactively to this case. The procedures followed in this case certainly would not be permitted today, given the *Apprendi* decision. A jury found the

defendant guilty of murder, in violation of section 9-1(a)(2) of the Criminal Code of 1961. See Ill. Rev. Stat. 1985, ch. 38, ¶ 9-1(a)(2). More specifically, the jury found beyond a reasonable doubt that (1) the defendant performed the acts that caused the death of Mary Rhodes and (2) when the defendant performed those acts, he knew that they created a strong probability of death or great bodily harm to Mary Rhodes. Ordinarily, the sentence for murder was imprisonment for a term not less than 20 years and not more than 40 years. See Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-1(a)(1)(a). In other words, 40 years was the maximum sentence based solely on the facts found by the jury beyond a reasonable doubt. However, at the defendant's sentencing hearing, the circuit court made a factual finding that the murder of Mary Rhodes was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, and on the basis of this factual finding— a finding made by the court alone, and not by the jury—the court sentenced the defendant to natural life imprisonment, all pursuant to section 5-8-1(a)(1)(b) of the Corrections Code. See *id.* ¶ 1005-8-1(a)(1)(b). The statute was clear and unambiguous in giving the circuit court the authority to make such a factual finding and to impose such a sentence.

¶ 21 The Supreme Court in *Apprendi* made clear that such a practice is unconstitutional. That is, the practice of allowing a sentencing court to impose a penalty beyond the prescribed statutory maximum based solely upon its own factual finding by a preponderance of the evidence that there exists some particular aggravating circumstance, other than a prior conviction, is a practice that violates a criminal defendant's right to the due process of law. *Apprendi*, 530 U.S. at 490. The Supreme Court held that in a state criminal prosecution, as in a federal criminal prosecution, any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in the charging instrument, submitted to a jury, and proved beyond a reasonable doubt. *Id.* at 476-77, 490. See also, *e.g.*, *People v. Swift*, 202 Ill. 2d 378, 383 (2002), and cases cited therein.

10

¶ 22    In his postconviction petition, the instant defendant tried to benefit from *Apprendi*, insisting that the decision applied to his case and required a reduction in his prison term.  However, as OSAD recognizes in its *Finley* brief, the *Apprendi* decision does not apply to the defendant's case, and the defendant cannot benefit from it.  Our Illinois Supreme Court has stated emphatically that the *Apprendi* decision "does not apply retroactively to causes in which the direct appeal process had concluded at the time that *Apprendi* was decided."  *People v. De La Paz*, 204 Ill. 2d 426, 429 (2003).  See also *Lucien v. Briley*, 213 Ill. 2d 340, 348 (2004) ("contrary to [*habeas corpus* petitioner's] suggestion, *De La Paz* was correctly decided").  This court decided the defendant's direct appeal on June 19, 1987.  See *People v. Fenderson*, 157 Ill. App. 3d 537 (1987).  The defendant timely petitioned our supreme court for leave to appeal.  This court issued its mandate to the clerk of the circuit court of Jefferson County on July 20, 1987, and the mandate never was withdrawn.  On February 3, 1988, our supreme court denied the defendant's petition for leave to appeal.  See *People v. Fenderson*, 118 Ill. 2d 547 (1988).  No petition for a writ of *certiorari* was filed.  The United States Supreme Court did not decide *Apprendi* until June 26, 2000, more than 12 years after the petition for leave to appeal was denied.  Quite clearly, the direct appeal process in this cause had concluded by the time *Apprendi* was decided, and therefore *Apprendi* does not apply to this cause.

¶ 23    This court notes that the defendant, in his September 2015 *pro se* amended motion to reconsider, asserted a claim distinct from his *Apprendi* claim.  He asserted that the extended-term portion of his natural life sentence, *i.e.*, the portion that exceeded the nonextended maximum of 40 years, was unauthorized by the criminal statute that the jury found him guilty of violating and therefore, according to the defendant, that portion of the sentence was void.  This same argument was presented to, and rejected by, the First District and the Second District of the Appellate Court,

11

in *People v. Rockman*, 2012 IL App (1st) 102729, and *People v. Smith*, 395 Ill. App. 3d 496 (2009), respectively. The First District recognized that the voidness argument was an attempt to avoid the *De La Paz* holding concerning *Apprendi* retroactivity. See *Rockman*, 2012 IL App (1st) 102729, ¶ 27 ("defendant recognizes the problem created for him by *De La Paz* and, as a result, he claims that he is not making an *Apprendi* argument but a voidness argument"). The argument is not any stronger now. Furthermore, after the decisions in *Rockman* and *Smith*, our supreme court decided *People v. Castleberry*, 2015 IL 116916, and explicitly abolished the void-sentence rule. A sentence's failure to conform to a statutory requirement does not render the sentence void; if the sentencing court had jurisdiction over the criminal and over the crime, the sentence was merely voidable, not void. *Castleberry*, 2015 116916, ¶¶ 11, 15. The defendant here relied on a void-sentence theory that is no longer valid.

¶ 24 The second potential issue that OSAD raises in its *Finley* brief is whether the circuit court was required to appoint a third postconviction counsel for the defendant after the court granted the second postconviction counsel's *Finley* motion and allowed her to withdraw. In February 2001, the circuit court first appointed postconviction counsel for the defendant, in compliance with section 122-4 of the Act. See 725 ILCS 5/122-4 (West 2000) (appointment of postconviction counsel). In November 2013, postconviction counsel was allowed to withdraw from the case, due to his appointment as an associate circuit judge, and the court appointed substitute postconviction counsel. Three months afterward, in February 2014, substitute postconviction counsel filed with the circuit court a *Finley* motion to withdraw from representation, having concluded that the defendant could not make a substantial showing of the claimed due-process violation because the *Apprendi* decision, upon which his claim was based, did not even apply to his case, since the direct appellate review of his case had been completed before *Apprendi* was even decided. (As explained

*supra*, this court agrees with the conclusion of postconviction counsel below.) The circuit court granted postconviction counsel's *Finley* motion. This procedure was in keeping with *Finley*. See *Finley*, 481 U.S. at 553, 558. See also, *e.g.*, *People v. Elken*, 2014 IL App (3d) 120580, ¶ 36 (where postconviction counsel concludes, at the second stage of postconviction proceedings, that his client's postconviction claims lack merit, he should seek to withdraw as counsel). After the circuit court allowed postconviction counsel to withdraw, the court was free to appoint another postconviction attorney or to have the defendant proceed *pro se*. *People v. Jackson*, 2015 IL App (3d) 130575, ¶ 17. Nothing in the Act or in case law required the circuit court to appoint another postconviction attorney in these circumstances. Any argument that the circuit court was required to appoint another postconviction attorney, after allowing one to withdraw pursuant to *Finley*, would lack merit.

¶ 25    OSAD's third potential issue is whether postconviction counsel failed to satisfy the requirements of Illinois Supreme Court Rule 651(c). As previously described, postconviction counsel, in February 2014, filed a *Finley* motion to withdraw as counsel and a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Under the Act, the defendant, as a postconviction petitioner, was entitled to a reasonable level of assistance from his appointed postconviction counsel. See, *e.g.*, *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). In order to ensure that the required level of assistance was provided, Rule 651(c) required that the record contain a showing that counsel (1) consulted with the postconviction petition in order to ascertain his contentions of constitutional violations, (2) examined the trial record, and (3) amended the *pro se* petition as necessary to present adequately the postconviction petitioner's claims. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). This showing could be made by a certificate filed by counsel. *Id.* Here, the record contains a satisfactory Rule 651(c) certificate filed by counsel in the circuit court

at the time she filed her *Finley* motion.  The defendant filed a written response to the *Finley* motion; though disagreeing with counsel's assessment of his case, he did not dispute counsel's assertions that she had consulted with him and had examined the trial record.  At a hearing on her *Finley* motion, counsel mentioned to the circuit court that she and the defendant had spoken via telephone and had exchanged letters; the defendant, who was present, did not dispute counsel's assertion. Nothing in the record calls into question any portion of the truth or accuracy of postconviction counsel's Rule 651(c) certificate.  Any argument that postconviction counsel had failed to comply with Rule 651(c), or had failed to provide a reasonable level of assistance, would lack merit.

¶ 26    This court notes that the circuit court, in 2000, recharacterized the defendant's section 2-1401 petition as a (successive) postconviction petition, without prior notice or admonishment to the defendant.  A few years later, our supreme court made clear that such a recharacterization must not be done without first notifying and admonishing the defendant.  See *People v. Pearson*, 216 Ill. 2d 58, 68 (2005).  See also *People v. Shellstrom*, 216 Ill. 2d 45, 57 (2005), *Pearson*'s companion case.  However, in the instant case, the circuit court advanced the recharacterized postconviction petition to the second stage of postconviction proceedings and appointed postconviction counsel for the defendant, thus rendering the prior notice and admonishments unnecessary.  See *People v. Stoffel*, 239 Ill. 2d 314, 328 (2010).

¶ 27    Finally, in one of the two written responses that the defendant filed with this court in response to OSAD's *Finley* motion to withdraw as counsel on appeal, the defendant alleges that trial counsel provided constitutionally ineffective assistance by failing to advise him properly in regard to a plea offer that the State allegedly tendered to trial counsel and by mishandling plea negotiations, and the defendant seems to suggest that direct-appeal counsel was ineffective in regard to the issue of trial counsel's ineffectiveness.  This matter was not raised in the

14

postconviction proceedings in the circuit court, and it cannot be raised now. See *People v. Jones*, 211 Ill. 2d 140, 148 (2004) (where a defendant did not include a particular issue in the postconviction petition that he filed in the circuit court, he is barred from raising the issue in his appeal from the dismissal of that postconviction petition).

¶ 28                                CONCLUSION

¶ 29    The defendant failed to make a substantial showing of a constitutional violation, and the circuit court properly dismissed his postconviction petition at the second stage of postconviction proceedings. Any argument to the contrary would lack merit. Accordingly, OSAD is granted leave to withdraw as the defendant's attorney on appeal, and the judgment of the circuit court is affirmed.


¶ 30    Motion granted; judgment affirmed.